(C. D. 1088)

OXFORD UNIVERSITY PRESS, N. Y., INC. v. UNITED STATES

United States Customs Court, Second Division

(Decided March 5, 1948)

*Lane, Young & Fox* (*William H. Fox* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Richard H. Welsh*), special attorney), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

LAWRENCE, Judge: The question for our determination here is whether an importation invoiced as "Printing Plates (Electro Shells), for 'O. S. A. Craig-Shakespeare'" was properly classified by the collector of customs under the provision in paragraph 397, Tariff Act of 1930, for —

Articles or wares not specially provided for * * * if composed wholly or in chief value of iron, * * * copper, * * * or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

Plaintiff makes the following claims in its protest:

We claim that said printing plates (electro shells) are plates engraved or otherwise prepared for printing, and therefore are properly dutiable at 25% under par. 341, Tariff Act of 1930, or if not so dutiable then we claim they are properly dutiable at 25% under par. 372 of said act as parts of printing machines.

Paragraph 341 invoked by plaintiff is here set forth in full, the more pertinent language being italicized:

PAR. 341. Steel plates, stereotype plates, *electrotype plates*, half-tone plates, photogravure plates, photo-engraved plates, and plates of other materials, engraved or otherwise *prepared for printing*, and plates of iron or steel engraved or fashioned for use in the production of designs, patterns, or impressions on glass in the process of manufacturing plate or other glass, 25 per centum ad valorem; lithographic plates of stone or other material engraved, drawn, or prepared, 25 per centum ad valorem.

Paragraph 372 also relied upon by plaintiff reads, so far as here material, as follows:

PAR. 372. * * * printing machinery (except for textiles), * * * 25 per centum ad valorem; * * * *Provided*, That parts, not specially provided for, wholly or in chief value of metal or porcelain, of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts; * * *.

There is no controversy with regard to the copper tax of 3 cents per pound levied under the provisions of section 3425 of the Internal Revenue Code.

Each of the parties presented the testimony of one witness. Also in evidence are two exhibits. Illustrative exhibit A is a replica of one of the imported articles, and illustrative exhibit B exemplifies such an article after it has been prepared for ultimate use, that is, for printing.

The witness who appeared for the plaintiff corporation had been its production manager for the past 6 years and stated that he had been in the book publishing business for 15 years and in the graphic arts field for 25 years. He testified that he is familiar with the imported articles and that they are electrotype shells, the copper printing surface

of printing plates. He described the process of their manufacture as follows:

* * * the type from which the book was to be printed was set on a monotype machine and in making the shells, an impression of the actual type is made on a wax surface. The wax surface being impressed on the type gives you a mold or matrix of the type. This wax mold is then coated with graphite to make it conductive of electricity and that wax mold then is put into an electrolytic bath and by electrolysis, a thin coating of copper is deposited on the mold. The thickness of that shell is about eight-thousandths of an inch of copper; and, after that is finished, a sheet of tin foil is placed on the back of the mold, that is, the copper shell, as a binding material, which is to make the backing which is added later adhere to the copper. Now, the shells come to us with the tin foil bond on them.

The witness then testified that in their imported condition the shells are "not completely" ready for use in printing; that before they are so used the back of the plate is filled with electrotype metal, which is primarily lead, to bring it up to the proper printing height and that then the plate is finished by having the edges trimmed and beveled. He stated that the articles represented by illustrative exhibit A are dedicated to the sole use of making printing plates.

At this point, it was conceded by counsel for the Government that if illustrative exhibit A were imported with a lead backing, it would be classified as a printing plate.

Plaintiff's witness further testified that the reason articles like illustrative exhibit A are not imported with the lead backing is that the standards in England as to height of printing plates are different from those in the United States, and if it were backed in England, the plate would have to be shaved down in the United States to be the proper height for use in American printing machinery.

He stated that after the lead backing has been added to illustrative exhibit A, the article is used on a printing press and that either a plate of this kind or actual type is essential to the functioning of a printing machine.

On cross-examination this witness testified that illustrative exhibit A is known as an electrotype shell; that you can call it a printing plate; that the difference between illustrative exhibits A and B is that illustrative exhibit A in its imported condition cannot be used for printing but that when it is made into the form of illustrative exhibit B, it is then known as a plate and is ready for use. He stated that it might be said that articles like illustrative exhibit A are bought to make plates out of them, but about nine-tenths of a plate is now present in the actual working surface as represented by illustrative exhibit A; and that when in actual use the finished plate is appropriately attached to a printing press.

Defendant offered the testimony of a photoengraver who, for 11 years, has been in charge of the engraving business of Continental Publications, and has had a total of 42 years' experience in the printing

field. He testified that he has seen articles like illustrative exhibit A hundreds of times; that they are electrotype shells and not printing plates, and that he has bought and sold them in the United States as "shells." He stated further that he makes shells for customers because they ship them across the country and it is cheaper to send articles like illustrative exhibit A through the mail.

On cross-examination the witness testified that said illustrative exhibit A is a shell prepared for printing; that in this country a shell is simply a duplicate of a printing plate; that the purpose of making a shell is either for printing or for duplicating molds. He stated, however, that illustrative exhibit A is not ready for use in its present condition but it has a surface prepared for printing, and that the so-called shell is an unfinished electrotype plate the same as "the foundation of a house is an unfinished house. It is still a shell."

He testified further that in buying printing machinery, one does not get a printing plate with the machinery; that commercially the engraving plate and the printing machinery are recognized as two distinct articles, but that the printing machine will not function as such without the plates.

We shall consider first the question whether the provision in paragraph 341, *supra*, for "* * * * electrotype plates, * * * prepared for printing * * * ," without other qualifying words, includes articles such as are here before us.

In support of its claim for classification of the importation under the provision above quoted, plaintiff relies upon the ruling of our appellate court in *Waltham Watch Co.* v. *United States*, 25 C. C. P. A. (Customs) 330, T. D. 49425, which involved the question whether certain unfinished watch pillar or bottom plates upon which various operations had to be performed before they would be ready for use (classified by the collector under paragraph 397 of the Tariff Act of 1930 as "Articles * * * composed * * * in chief value of * * * copper") properly came within the provision in paragraph 367 (c) (2) of said act set forth below:

PAR. 367 (a) Watch movements, and time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, whether or not designed to be worn or carried on or about the person, all the foregoing, if less than one and seventy-seven one-hundredths inches wide, whether or not in cases, containers, or housings:

* * * * * * *

(c) Parts for any of the foregoing shall be dutiable as follows:

* * * * * * *

(2) pillar or bottom plates, or their equivalent, shall be subject to one-half the amount of duty which would be borne by the complete movement, mechanism, device, or instrument for which suitable; * * * .

The court there stated—

The decision of this court depends upon the answer to the sole question presented: Are *unfinished* pillar or bottom plates dutiable under the above-quoted

*eo nomine* provision for "pillar or bottom plates or their equivalent" in said paragraph 367. It is to be noted that said subparagraph (c) (2) contains no express provision for unfinished pillar or bottom plates, nor does it contain any similar provision, such as is found in paragraph 397, *supra*, "whether partly or wholly manufactured." [Italics quoted.]

After reviewing the decisions in *United States* v. *Riga*, 171 Fed. 783 (parts of rifles); *United States* v. *Lyon & Healy*, 4 Ct. Cust. Appls. 438, T. D. 33873; and *Richard & Co. et al.* v. *United States*, id. 470, T. D. 33883 (parts of musical instruments), it was the conclusion of our appellate court in the *Waltham Watch Co.* case, *supra*, that the provision for pillar plates in paragraph 367 (c) (2), *supra*, embraced the articles in their unfinished state, even though, as stated by the court, the subparagraph contained no express provision for "unfinished" pillar or bottom plates, and hence, as parts of watch movements, were dutiable at one-half the amount of duty which would be borne by the complete movement, as claimed by the plaintiff therein.

However, the *Waltham Watch Co.* case, *supra*, does not sustain the particular claim of the plaintiff here being considered. The imported articles in that case were in fact "pillar or bottom plates" for use in the manufacture of watches or similar time-keeping devices, upon which certain finishing processes had to be performed before they would reach the status of finished parts. The court did not hold that the articles were parts of pillar or bottom plates, but were parts of time-keeping devices. By analogical reasoning, electrotype shells are not parts of electrotype plates, which are integral and not made up of parts, although they may be unfinished parts of something else, namely, printing machinery, as will appear *infra*. Being in fact incomplete electrotype plates, it would be incongruous and a contradiction in terms for us to hold that they are electrotype plates "prepared for printing" within the meaning of paragraph 341, *supra*.

On the record before us we find that plaintiff has failed in its proof for classification of the importation under said paragraph 341 and consequently we hold that the imported articles are not within the reach of the provision therein for "electrotype plates, * * * prepared for printing," the primary provision of the tariff act under which relief is sought. The record in this case is clear that the articles when finished could not be electrotype plates, engraved, nor is it so contended by either party, but rather electrotype plates prepared for printing by an electrolytic process.

We shall now consider plaintiff's alternative claim. In its protest it is stated—

* * * or if not so dutiable [under paragraph 341, *supra*] then we claim they are properly dutiable at 25% under par. 372 of said act as parts of printing *machines*. [Italics supplied.]

In the brief filed by plaintiff, there appears the following:

Since the provision in Par. 372 is for parts of "printing machinery," and not for parts of "printing machines," the law does not require that the printing plates at bar be an essential and integral part of the printing machines in which used, without which the machines would not function. The term "printing machinery" is a much broader term than the term "printing machines," the former including articles and parts that are combined for operation as a unit, and appurtenances necessary to the working of a printing machine, that are not essential and integral parts of a printing machine. *United States* v. *J. E. Bernard & Co., Inc.* 28 C. C. P. A. 182; C. A. D. 142; *Liberty Lace & Netting Works* v. *United States,* C. D. 968; *Johnson Iron Works, Dry Dock & S. B. Co.* v. *United States,* 48 Treas. Dec. 237, T. D. 41132.

The Government does not seriously challenge the alternative claim of plaintiff that the imported articles are parts of printing machinery but rests mainly upon the tenuous contention that the claim in the protest that the articles are dutiable as parts of "printing machines" was not sufficient to indicate to the collector of customs that the plaintiff was really alleging that the articles are parts of "printing machinery." It is true that "printing machines" are not mentioned in paragraph 372, but that fact renders the claim of plaintiff all the more obvious.

We consider plaintiff's claim under paragraph 372, *supra,* to be sufficiently distinct and clear as to meet the requirements of section 514, Tariff Act of 1930, and that it could not possibly have misled the collector of customs in reviewing his decision in accordance with section 515 of said act. Worthy of note in this connection is the following statement of the Supreme Court of the United States in *Arthur* v. *Morgan,* 112 U. S. 495, 501—

\* \* \* A protest is not required to be made with technical precision, but is sufficient if it shows fairly that the objection afterwards made at the trial was in the mind of the party and was brought to the knowledge of the collector, so as to secure to the government the practical advantage which the statute was designed to secure. *Converse* v. *Burgess,* 18 How. 413; *Swanston* v. *Morton,* 1 Curtis, 294; *Kriesler* v. *Morton,* Id. 413; *Burgess* v. *Converse,* 2 Id. 216; *Steegman* v. *Maxwell,* 3 Blatchford, 365; *Frazee* v. *Moffitt,* 20 Id. 267. \* \* \*.

See also *Carter* v. *United States,* 1 Ct. Cust. Appls. 64, T. D. 31033, and cases therein cited.

While the courts have not laid down any definitive line of demarcation between "machines" and "machinery," the following quotations from the opinion of this court in *Johnson Iron Works, Dry Dock & S. B. Co.* v. *United States,* 48 Treas. Dec. 237, T. D. 41132, are worthy of note—

"Machinery" is not synonymous with "machine." *Seavey* v. *Central Fire Ins. Co.* (111 Mass. 540, 541); *Fenson* v. *Bulman* (17 Man. 307; 7 West L. R. 134, 137). The word "machinery" is of a much broader application and much more comprehensive and extensive. *Worden-Allen Co.* v. *Milwaukee* (171 Wis. 124; 176 N. W. 877, 878, and other cases cited in vol. 38, p. 330, Corpus Juris). The word "machinery" includes appurtenances necessary to the working of a

machine.    Bache *v.* Central Coal, etc., Co. (127 Ark. 397; 192 S. W. 225, 227, and other cases cited in said volume).

Likewise in volume 3, page 204, Second Series of Words and Phrases, we find the following:

> According to Webster's International Dictionary a "machine" is any mechanical contrivance, while "machinery" is the means and appliances by which anything is kept in action or a desired result is obtained:   *   *   *   (Tubbs *v.* Mechanics' Ins. Co., 108 N. W. 324, 326, 131 Iowa, 217.)

And on page 203 of the latter work it is stated that—

> According to Bouvier's Law Dictionary "machinery" is a more comprehensive term than "machine" and includes the appurtenances necessary to the working of a machine.    (Citing Doty *v.* Oriental Print Works Co., 67 Atl. 586, 591; 28 R. I. 372, and numerous other cases.)

In support of plaintiff's alternative claim for classification of the imported articles as "parts of printing machinery" under paragraph 372, *supra*, the following two cases upon kindred subjects lend themselves effectively to resolving the problem confronting us.    *United States* v. *Sussex Print Works*, 17 Ct. Cust. Appls. 257, T. D. 43686; and *United States* v. *Schenkers, Inc.*, id. 231, T. D. 43669.

In *United States* v. *Sussex Print Works* case, *supra*, it is stated—

> This appeal involves two protests.    One is directed towards the classification of the finished print roller and the other towards the print roller ready for engraving, but, in its imported condition, an unfinished roller.
>
> It will be noted that paragraph 372 provides for finished or unfinished parts of textile machinery.    It seems to be conceded that both articles under consideration are parts, finished or unfinished, of textile machinery.    Paragraph 396 provides for print rollers but has no provision for parts.
>
> The Government argues that the parts have been dedicated to the sole use of making rollers and are in fact unfinished rollers and, therefore, are covered by the provision "print rollers" and contends that the decision of the Circuit Court in *United States* v. *Riga*, 171 Fed. 783, involving forged rifle barrels, rough-bored, is controlling.    The court there held that the barrels were for use as parts of rifles and suitable for use for no other purpose and were, therefore, dutiable under the provision of paragraph 157, Tariff Act of 1897, as "rifles and parts thereof." Since the provision there was for rifles *and parts thereof*, it is easy to distinguish that case from the case at bar where paragraph 396 has no provision for parts. [Italics quoted.]

After an examination of the legislative history of paragraph 396 of the Tariff Act of 1922 there involved, our appellate court said:

> Attention is again called to the fact that there is no provision in paragraph 396 for the unfinished roller or for parts, finished or unfinished.    This would seem to be in entire harmony with the theory that Congress was carrying out the wishes of the Print Cutters' Association and that it did not concern itself with the unfinished print roller which had no engraving process applied to it and omitted any provision for it in the paragraph.
>
> In argument before this court the Government suggests that it would be an anomalous result to hold that the finished print roller was properly dutiable under paragraph 396, while the unfinished and unengraved roller was dutiable under paragraph 372 as unfinished parts of textile machinery.    In our view of the case no anomalous condition arises from this construction.    It was the finished engraved roller upon which the higher rate was sought and this article was taken out of the

provision for textile machinery and parts thereof and the unfinished article was left in the paragraph.

Our appellate court there held the unfinished roller to be properly dutiable under the provisions of paragraph 372 of the Tariff Act of 1922 as parts of textile machinery, and the finished roller dutiable under paragraph 396 of said act as a print roller.

In *United States* v. *Schenkers, Inc., supra,* it appears that certain copper rollers intended, when properly engraved, to be used in printing or stamping designs on silk cloth had been classified by the collector as articles composed wholly or in chief value of metal under paragraph 399 of the Tariff Act of 1922. The court held, however, that they were properly classifiable under paragraph 372 of said act as unfinished parts of a textile machine. We quote from the opinion of the court as follows:

> In this court the Government has invoked another paragraph under which it insists the merchandise should be classified, to the exclusion of both the paragraph fixed upon by the collector and that under which appellee claims, and asks us to hold applicable paragraph 396, which reads:

> Print rollers and print blocks used in printing, stamping, or cutting designs for wall or crepe paper, linoleum, oil cloth, or other material, not specially provided for, composed wholly or in chief value of iron, steel, copper, brass, or any other metal, 60 per centum ad valorem.

> \*      \*      \*      \*      \*      \*      \*

> The principal insistence of the Government here is that the merchandise in question falls under the *eo nomine* provision of paragraph 396, *supra,* which specifically mentions print rollers. The contention is that the importations are known as print rollers and have become dedicated to the only use for which they are manufactured.

After considering the cases of *United States* v. *Lyon & Healy, supra,* and *United States* v. *Riga, supra,* our appellate court said—

> The principle applied in those two cases was that where a material has been so advanced in manufacture as to have reached a stage in which it is clearly incapable of being made into more than one article, then it shall be deemed, even though unfinished, to have been so dedicated to a single use as to fix its status as a part of that article. We think this naked principle of law thus stated is sound, but is it applicable in the instant case?

> It does not seem to us to be so. Paragraph 396 provides for print rollers "used in printing." The unengraved roller can not be so used, and the paragraph makes no provision for parts. In the musical-instrument case and the rifle case, *supra,* the words "parts thereof" were expressly inserted. In various paragraphs of the existing law, after mentioning specific articles, these words are inserted. Did paragraph 396 read "print rollers, and parts thereof," we would be confronted by a different question. But since Congress did not itself insert the words we must assume it did not wish parts to be included, and we have no authority to read them into the statute. We therefore decline to hold paragraph 396 of the act of 1922 applicable to these unfinished rollers.

> Where, then, do they belong?

> The collector assessed them under paragraph 399 as "articles composed wholly or in chief value of metal." The question is whether there is any paragraph

which is more specific. Appellee points to the language of paragraph 372, which reads:

* * * all other textile machinery or parts thereof, finished or unfinished, not specially provided for.

In the ordinary course of practice, the particular unengraved rollers involved become, when further processed by engraving, parts of a mechanism for printing designs upon cloth—in this case silk. They fall, therefore, within the classification of "parts of textile machinery." Paragraph 372 says "parts * * * finished or unfinished, not specially provided for." [Italics ours.] Under our view they are not, in their unengraved condition, as imported, "specially provided for" in 396, and no other part of the law is suggested as covering them, except these three paragraphs. Paragraph 372 seems to be more specifically applicable than 399.

The principle laid down by the *Sussex Print Works* and *Schenkers* cases, *supra*, is deemed applicable to the controversy here in issue. Those cases stand for the proposition that while finished print rollers are properly classifiable under the *eo nomine* provision therefor, unengraved print rollers, being parts of printing mechanisms and not being specially provided for as unfinished rollers, are classifiable as parts of textile machinery. By analogy, electrotype plates when prepared for printing are specifically enumerated in paragraph 341, while electrotype shells (incomplete electrotype plates) for which no specific provision is made should logically be classified as parts of printing machinery under paragraph 372.

While there are certain variants between the cited cases and the instant one, they are not sufficient to detract from the applicability of the legal principles of those cases to the present decision.

From the record in this case it is uncontradicted that the articles before us in their imported condition are dedicated to the sole use in printing presses and, after they have been backed with lead, trimmed and beveled, are so used, and that either a plate of this kind or actual type is essential to the functioning of printing machinery.

It is not overlooked that in the *Sussex Print Works* and *Schenkers* cases, *supra*, the provision in paragraph 372 of the Tariff Act of 1922 for parts of textile machinery, there held applicable, was qualified by the words "finished or unfinished," whereas the proviso in paragraph 372 of the Tariff Act of 1930 providing for parts of printing machinery does not include those qualifying words. However, for reasons which will appear below, the omission of those qualifying words is not of special significance in this instance in view of the doctrine of the *Waltham Watch Co.* case, *supra*, on parts of watch movements; the *Riga* case, *supra*, on parts of rifles; as well as the *Lyon & Healy* and *Richard* cases, *supra*, on parts of musical instruments.

While the *Waltham Watch Co.* case, *supra*, relied upon by the plaintiff to bring the imported articles within the purview of said paragraph 341, failed in that respect, it does nevertheless contain

authoritative value in support of plaintiff's alternative claim for classification of the importation under paragraph 372 of the Tariff Act of 1930 as parts of printing machinery.

So far as we know, there is no such thing as a part of an electrotype plate. As observed by our appellate court in the *Waltham Watch Co.* case, *supra,* —

* * * If Congress had added the term "and parts" after the *eo nomine* provision for pillar plates, we would be at a loss to know to what kind of article the term would apply, since as far as we know pillar plates are integral and are not made up of parts. * * *.

If we transpose the words "electrotype plates" for "pillar plates" in the above quotation, the signifiance becomes obvious. Inasmuch as an electrotype shell is an incomplete electrotype plate, it is *ipso facto* an unfinished part of printing machinery.

The rule of the *Waltham Watch Co.* case, *supra,* may be stated to be that an *eo nomine* provision in the tariff act, which contains no qualifying words or phrases to indicate whether or not only completely finished articles are intended to be covered thereby, includes an article which has been advanced to a point where its use as the article provided for is made clear, or its utility in any of its other possible uses has been destroyed.

From the record and exhibits in this case, it is evident that the articles here in issue have been advanced to a point where their use as parts of printing machinery has been made clear, and there is no other use to which they may be put. Therefore, the importation described on the invoice accompanying the entry covered by the protest herein as "Printing Plates (Electro Shells), for 'O. S. A. Craig-Shakespeare'," not being specially provided for in paragraph 341, *supra,* or elsewhere in the tariff act, comes within the provision in paragraph 372 of said act for parts of printing machinery.

Our conclusion obviates the anomaly of imposing a duty (45 per centum ad valorem under paragraph 397) 80 per centum greater upon an incomplete part than the rate (25 per centum ad valorem under paragraph 341) applicable to the article when ultimately completed and prepared for printing. It was stated by our appellate court in *United States* v. *J. M. Lehman Co., Inc.,* 22 C. C. P. A. (Customs) 106, T. D. 47081, that—

* * * It would be anomalous to admit the finished product at a lower rate of duty than applies to the material from which it is produced. Such anomalies are generally looked upon as being contrary to legislative intent, and this and other courts have frequently declared that when the language used to express the legislative will clearly warrants a construction in accord with the general policy of Congress to not subject completed articles to lesser duty than the material of which they are composed, such construction is required. *United States* v. *Grasselli Chemical Co.,* 5 Ct. Cust. Appls. 320, T. D. 34527, is a case in point.

We accordingly find and hold that the imported articles should be classified as parts of printing machinery and that they are dutiable at the rate of 25 per centum ad valorem under paragraph 372 of the Tariff Act of 1930 (plus 3 cents per pound copper tax assessment under section 3425 of the Internal Revenue Code, which is not here in controversy). That claim in the protest is therefore sustained and the decision of the collector of customs reversed. All other claims are overruled.

Judgment will be entered accordingly.