(C. D. 2023)

UNITED ENTERPRISES ET AL. *v.* UNITED STATES

United States Customs Court, First Division

(Decided August 25, 1958)

*Lawrence & Tuttle* (*George R. Tuttle, Sr.,* and *George R. Tuttle, Jr.,* of counsel) for the plaintiffs.

*George Cochran Doub,* Assistant Attorney General (*Joseph E. Weil* and *William J. Vitale,* trial attorneys), for the defendant.

BEFORE OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The protests enumerated in the schedule attached to this decision were consolidated for trial and are directed

against the collector's classification of certain so-called "shoji" doors and panels under the provision in paragraph 411 of the Tariff Act of 1930 for screens, wholly or in chief value of wood, not specially provided for, with consequent assessment of duty at the rate of 50 per centum ad valorem. The claim made in each of the protests is for duty at the rate of 16⅔ per centum ad valorem under the provision in paragraph 412 of the said act, as modified by the Presidential proclamations reported in T. D.'s 52373 and 52476, for manufactures of wood, not specially provided for.

The terms "door" and "panel" seem to have been used throughout the record to describe the same thing, that is to say, a panel. According to the record, one of the principal uses of the shoji panels in issue is to make sliding doors for rooms, closets, and furniture, and this probably accounts for the interchangeable use of the terms. The merchandise in issue will hereinafter be referred to as panels.

The panels consist essentially of a rectangular wooden frame with a wooden grille, fretwork, or grating of various designs filling the inside of the frame. The grilles of some of the panels are backed with a white, translucent paper, while others are unbacked. Some of the grilles have two identical, but separate, sides, so made that the back side can be removed and a chosen background material installed sandwich-fashion between the two sides. Some of the panels are in natural wood finish, while others are painted. Apparently, no hardware or other fittings are attached to any of the panels. The panels are in various sizes, some as small as 36 inches by 18½ inches, and running up to sizes of 8 feet by 68½ inches.

Plaintiffs make two alternate contentions, the first being that none of the imported articles is a screen in the condition as imported nor have they been advanced to a point where their use as screens has been made clear or their utility in any other possible use has been destroyed and, hence, under the principle expressed in cited cases, are not included within the *eo nomine* designation of "screens" in paragraph 411, *supra*. Alternatively, it is contended that the shoji panels without backing are not screens within the common meaning of that term, as used in paragraph 411.

The evidence indicates that the shoji panels at bar have extremely wide application. It is quite obvious that their use in the United States serves both decorative and utilitarian purposes and represents an adaptation of the shoji as used in Japan. Funk & Wagnalls New Standard Dictionary, 1930, 1942, defines "shoji" as:

The semitransparent paper slides used by the Japanese in the daytime of winter, to compose the sides of the house, instead of the wooden sliding doors *(amado)* intended for protection at night.

Webster's New International Dictionary, 2d edition, 1945, defines it as—

In Japan, a paper screen serving as a wall or partition.

According to the evidence offered at the trial, it appears that shoji panels are not used in outside walls, in this country, but serve a wide variety of purposes indoors. Their principal uses, according to the evidence, seem to be in the carrying out of architectural or decorative schemes with a Japanese motif or theme. In their use, they may be solidly fixed in position, as when used as walls or partitions between rooms, or as dividers within rooms, or fastened to walls for purely decorative purposes, or with the utilitarian purpose also of covering wall openings or unsightly places, or for similar purposes when fastened to ceilings. They may also be used mounted on tracks at one end or both ends to serve as sliding doors for rooms, closets, or furniture, or as sliding shutters or curtains, when mounted before windows, to diffuse light or shut out unsightly scenes or insure privacy. Lastly, they may be used in a manner that may be termed as "free-standing," such as a number of panels being hinged together and used as folding floor screens.

It is the defendant's contention that the panels at bar are within the common meaning of the term "screen," as found in Webster's New International Dictionary, 2d edition, 1945, and reading as follows:

> Anything in the nature of a partition or curtain, as a portable covered framework, that cuts off inconvenience, injury, or danger; that which shelters or conceals from view; a shield or protection; as, a fire *screen*; a window *screen*.

The defendant contends that all of the uses to which the testimony of the witnesses indicates the imported articles may be put, i. e., as partitions, room dividers, doors, light diffusers, coverings, decorations, or folding screens, are uses of screens, and that, hence, the imported articles are embraced by the term "screen."

While it is certain that the term "screen" is one of wide application and embraces articles made of many different materials and in many different forms, we do not believe that, in common understanding, and particularly as found in paragraph 411, *supra*, it covers literally *anything* in the nature of a partition or curtain, or *anything* which shelters or conceals from view, or *anything* which is a shield or protection. "Anything," if taken in the literal sense would include walls, doors, hedges, fences, armor plating, and thousands of other things which may be considered to be screens in a figurative sense, but not in the sense of naming the specific articles which commonly are known as screens.

We, therefore, believe that the dictionary definition quoted above is to be taken in its figurative sense, but that the specific articles commonly known as screens are more aptly described in the language

which we have italicized in the following definition found in Funk & Wagnalls New Standard Dictionary, 1942, of the noun "screen":

1. Anything that separates or cuts off, as inconvenience, injury, or danger. (1) *A thin structure placed before objects to conceal, separate, or shield them; sometimes a frame covered with paper or cloth, and usually movable;* hence, any means of shelter, protection, or defense; as, a door-*screen;* a fire-*screen;* a *screen* of leafy branches. (2) *Arch. A partition, perclose, or other construction, properly light, and permissibly latticed, or of openwork, dividing one part of a building, as choir, chancel, or chapel, from another;* as, a choir-*screen;* an organ-*screen.*

Seven witnesses who were familiar with the nature and uses of shoji panels were called to testify, five for the plaintiff and two for the defendant. It seems clear from their testimony that the known uses and possibilities of use of shoji panels in American architecture and decoration are many and are constantly developing. While the use of the panels at the time of importation was characterized by some witnesses as a fad or fashion of the moment, nevertheless, it also appears that they are finding a position as a useful material in the building and furnishing of American homes.

Perhaps because the panels have such a wide variety of uses, the record does not indicate that any one use predominates and may be considered the chief use. Each of the witnesses who testified as to use recounted his own experience with them, and there was no particular pattern of uniformity in their use discernible in their testimony. Thus, some used them largely for making folding screens, while others used them largely by mounting them on tracks and using them as doors, etc.

A consideration of the testimony offered at the trial and of the exhibits representing the imported merchandise, and of illustrative exhibits showing some uses, leads us to the conclusion that, as imported, the panels are not dedicated to the making of any particular article or class of articles, but are actually materials with the use of which many different articles may be made.

Thus, they may be used to make doors or walls, which are, in our opinion, not screens, or they may be used to make partitions, dividers, light diffusers, or floor screens, which we consider to be screens. In their imported form, the articles at bar are adaptable to all of these uses—some, because of their size, being more readily adaptable to particular uses than others—but they are all essentially materials with the use of which many articles, including screens, may be made.

As has been said, one of plaintiffs' contentions is that the shoji panels, in their imported condition, have not been advanced to a condition where their use as screens has been made clear or their use for other possible uses has been destroyed. Hence, it is claimed, they are not classifiable under the *eo nomine* provision for "screens" in paragraph 411, *supra.*

While the record is not clear on the subject, we think it is apparent that in virtually all applications of the shoji panels at bar they require the addition of some form of mounting or hardware to be made useful. Thus, the sliding doors or shutters require the addition of tracks, the folding screens require the addition of hinges, and, presumably, when used in fixed positions, such as in partitions, light diffusers, decorations, and the like, some form of fitting and mounting must be done to the panels to achieve the purpose for which they are used. In other words, in their imported condition, the articles at bar are not *per se* immediately useful for any purpose, except as materials for further manufacture.

In essence, it is plaintiffs' claim that the articles before us are materials from which screens, among other things, may be made, but have not yet reached such a condition of completeness that they have achieved the status whereby the name "screens" might be properly applied to them.

In view of the fact that the provision for "screens" in paragraph 411 is unqualified and does not contain any language such as "finished or unfinished" or "wholly or partly manufactured" to indicate to what extent the articles intended to be covered thereby must be completed or finished to take classification thereunder, plaintiffs rely upon the decision of the Court of Customs and Patent Appeals in the case of *Waltham Watch Co.* v. *United States*, 25 C. C. P. A. (Customs) 330, T. D. 49425. The rule of that case was stated by the second division of this court in the case of *Oxford University Press, N. Y., Inc.* v. *United States*, 20 Cust. Ct. 78, C. D. 1088—

\* \* \* to be that an *eo nomine* provision in the tariff act, which contains no qualifying words or phrases to indicate whether or not only completely finished articles are intended to be covered thereby, includes an article which has been advanced to a point where its use as the article provided for is made clear, or its utility in any of its other possible uses has been destroyed.

Applying the rule as thus stated to the facts in the case at bar, we find that, in the condition as imported, the shoji panels have not been advanced to the point where their use as screens is made clear, or their utility in any of their other possible uses has been destroyed. The facts show that they consist of panels which are useful, suitable, adaptable, and available for the making of many different articles, both screens and articles other than screens.

They are, therefore, not properly classifiable as screens, and, there being no more specific tariff designation therefor, they are properly classifiable under the provision for manufactures of wood, not specially provided for, in paragraph 412, as modified, as claimed in the protests.

Judgment will issue accordingly.