(C.D. 2466)

REYNOLDS CORPORATION 
FRANK P. DOW CO., INC. } *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 22, 1964)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*John W. Douglas,* Assistant Attorney General (*Morris Braverman,* trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: Pursuant to the provision in paragraph 1003 of the Tariff Act of 1930 for "Jute yarns or roving, single, coarser in size

than twenty-pound," the collector of customs at the port of San Francisco levied duty at the rate of 2½ cents per pound upon an importation of merchandise invoiced as 80-pound jute yarn, "D" grade, single ply.

It is the contention of plaintiffs herein that said merchandise is properly free of duty as oakum, as provided in paragraph 1729 of said act.

The merchandise in issue is identified in the instant record as plaintiffs' exhibit 1. It was described by plaintiffs' witness, Kenneth R. Reynolds, vice president of the Reynolds Corporation as 80-pound "D" grade yarn, a very low-grade jute yarn or rove single.

Mr. Reynolds also testified that his company, with which he has been associated in various capacities since 1934, is engaged in a general cords and twine business and imports twine and cordage products. It is the United States representative for certain Japanese cordage and jute mills. He stated that, during the year 1954, he became acquainted with a man who had an idea for making a new improved kind of oakum, known as white oakum. Together, they developed that product, and, in the process, found that 80-pound "D" grade jute yarn had the requisite fluffiness and absorbency for use in the manufacture of white oakum.

A sample of white oakum, produced by Sealite, Inc., was introduced into evidence as plaintiffs' exhibit 2. Mr. Reynolds stated that he was a member of the board of directors and secretary of Sealite, Inc.; that he is familiar with the way in which plaintiffs' exhibit 2 is made; and that he had often handled sales of that merchandise, especially in the Hawaiian Islands. He described the process of converting the imported "D" grade yarn into white oakum as follows:

* * * Depending upon the diameter of the oakum they want to make, they pull this material through a water bath, so each strand picked up a better moisture, and then through a powder, which is a trade secret, and up through a braider and a jacket is put around it, and it holds it in a rope form.

This witness further testified that white oakum is used by plumbers and sewer contractors for closing bell and spigot pipes; that its uses are solely those illustrated by Sealite Bulletin No. 600, which was received in evidence as plaintiffs' exhibit 3; that his company imports merchandise like plaintiffs' exhibit 1 for no other purposes than for use in white oakum; and that he had never seen grade "D" 80-pound jute yarn sold as such in this country.

On cross-examination, this witness stated that he was familiar with "M" grade jute yarn, which he described as similar to "D" grade. He called it a very loose term for low-grade rope made in Siam from a mixture of cannub and jute. He further testified that plaintiffs' exhibit 2 is ⅞-inch white oakum, composed of 38 strands of jute rove, drawn through water, through a powder, through a braider, and then

enclosed in a glass fiber jacket to hold it in rope form. The number of strands of jute roving used will determine the diameter of the white oakum, and the smallest they make is ⅜ inch, composed of 7 strands.

Mr. Reynolds also testified that the only 80-pound jute yarn single which his company imports is used in the manufacture of oakum. He did not believe that this grade would be capable of being manufactured into tying twine, nor used as a filler in the manufacture of electric or telephone cables, nor in the manufacture of material for acoustical purposes.

Testifying on behalf of defendant was William E. Kichline. He stated that, except for a period of 5 years from 1947, all of his business experience has been with the Ludlow Corp., a firm which manufactures jute, flax, and hemp products, primarily. His affiliation with the company since 1928 has included service in the mills, working with machinery; in India, where the company has one of its large plants; as mill superintendent of a small plant in the eastern portion of this country; and in the sales department.

Mr. Kichline testified that his firm uses approximately one-half million pounds of 80-pound jute yarn singles in its manufacturing operations in the United States during the course of a year. However, it does not import material of the quality of plaintiffs' exhibit 1. The material which it does import is used largely in the manufacture of 2-, 3-, or 4-ply tying twine. Some of it was also used by a manufacturer of "this stranded oakum," located in Salt Lake City, until such time as that manufacturer was able to make a foreign connection for his supply. This witness had not observed the process by which the manufacturer converted jute yarn single into oakum. Nor had he ever seen merchandise like exhibit 1 plied into tying twine. It was his opinion, without regard to its possible adverse effect on this case, that "in this market you couldn't sell a thing as poor as this [plaintiffs' exhibit 1] as tying twine."

Apparently, it is the contention of plaintiffs herein that the subject merchandise has been established by the evidence of record in this case to be the commodity provided for in paragraph 1729 of the Tariff Act of 1930 under the name of oakum, as that term has been judicially construed in the case of *General Twine Corp.* v. *United States*, 42 Cust. Ct. 121, C.D. 2075. But whether the point relied upon is that the instant material is oakum *per se*, or material to be processed into oakum, or unfinished oakum, seems not too clearly brought out in the arguments advanced in the brief filed in behalf of plaintiffs. Initially, it is urged that since the involved jute yarn has been shown to be unfit for manufacture into rope or twine; possesses the requisite fluffiness and absorbency for processing into oakum; and is only used in the manufacture of oakum, it possesses the same characteristics as the twisted jute packing involved in the

*General Twine* case, *supra*, and therein held to be oakum. Then, it is contended that the fact that the subject yarn must be processed beyond its imported condition before it is ultimately used for closing pipes does not detract from its status as oakum. And, finally, it is argued that since the imported material is not suitable for any other commercial use, it must be considered to be oakum. Cited in support of the last-stated proposition are the cases of *Waltham Watch Co.* v. *United States*, 25 CCPA 330, T.D. 49425; *Nyman & Schultz* v. *United States*, 14 Ct. Cust. Appls. 432, T.D. 42060; *Oxford University Press, N.Y., Inc.* v. *United States*, 20 Cust. Ct. 78, C.D. 1088; and *Swank, Inc.* v. *United States*, 26 Cust. Ct. 454, Abstract 55650, authorities which, as will be developed, *infra*, at most suggest that the instant material is unfinished oakum.

Counsel for defendant argues that the presumption of correctness of the collector's classification of the instant merchandise has not been overcome. It is urged that the proof does not negate the fact that the importation consists of jute yarns; that, in their imported condition, the subject yarns are not oakum, nor a substance used for the purposes for which oakum is used; and that said yarns are merely material which the importer used for the manufacture of oakum.

In the case of *General Twine Corp.* v. *United States*, *supra*, this court considered the tariff provision for oakum, in connection with an importation of untarred, dry, twisted jute packing, which, in its imported condition, was ready for use as a calking substance. After examining a somewhat voluminous record, containing the sharply divergent testimony of witnesses for the respective parties, and reviewing dictionary definitions and some Tariff Commission information on the subject of "oakum" and "twisted jute packing," we stated:

From the foregoing, we are inclined to the view that oakum is a material which assuredly is not characterized solely by reason of its physical state, structure, and composition. It may be, and in the case of recognized marine oakum is, a product of hemp or sunn fiber, or as in the case of what is admittedly plumbers' oakum, a product of jute. It may be in the form of separated fiber, or in the form of a sliver resulting from one or more processes of carding the raw material, and concededly may be, and sometimes is, put through the operations of a drawing frame.

Since, as we had thus observed, whether or not a substance was oakum could not be ascertained from physical condition alone, we deemed it appropriate, under authority of the case of *United States* v. *Quon Quon Company*, 46 CCPA 70, C.A.D. 699, to consider use as a determining factor. Accordingly, we stated:

There can be little doubt from the instant record that both plumbers' oakum and twisted jute packing subserve the same ultimate purposes. They are both used as calking materials. * * * Whether in the sliver, single-twisted strand, or multiple-twist put-up, this material is chiefly used to fill a joint in a pipe or a

crevice in a deck or building to contain the compound which seals them. And apparently that form is used which suits the individual preference of the user.

If, as construed in the *General Twine* case, oakum is a fibrous substance which is chiefly used in its condition as imported, as a calking material, it is obvious that the instant merchandise does not respond to that description. It is not here contended, and seemingly could not be, that the involved jute yarns are usable, as imported, as calking materials. What they are, and what the record plainly shows them to be, is material for processing into a product which is useful for calking purposes. To that extent, the subject merchandise is different from the twisted jute packing in the *General Twine* case, and does not warrant classification as oakum *per se.*

It remains to be seen, however, whether the authorities called to our attention by counsel for plaintiffs require us to consider this merchandise to be unfinished oakum, that is, material so far advanced in its manufacture as to be dedicated to use in the making of oakum, and having no other practical commercial use, would, therefore, be properly classifiable as oakum.

The merchandise involved in *Waltham Watch Co.* v. *United States, supra,* consisted of unfinished watch pillar or bottom plates. These articles were designed to be used, after further processing, solely as pillar plates for watch movements. In their condition, as imported, they were identifiable as pillar plates, unfinished, and, according to the court, fell within the rule expressed in *United States* v. *Riga,* 171 Fed. 783, that "when the article as imported affords evidence as to the use to which it is to be applied and has reached a form and stage wherein it is fit for no other useful purpose than as a part [of a designated article] * * * then, for tariff purposes, it may safely be regarded as within the provision for parts [of said designated article]."

The case of *Nyman & Schultz* v. *United States, supra,* was concerned with perforated strips of steel, so treated prior to exportation as to be suitable for use as safety-razor blades after further processing in this country. As imported, the steel had been tempered, polished, and punched with holes to fit the posts of safety razors. In holding that said steel strips were unfinished safety-razor blades, the court quoted the following from *United States* v. *American Bead Co.,* 9 Ct. Cust. Appls. 27, T.D. 37873:

* * * An article commercially suitable and commercially used for the making of different things is a material which is just as much adapted to the production of all of them as it is to the production of any one of them, and until it has been finally appropriated to some definite manufacturing use and has been given the distinguishing characteristics which clearly identify it as one of the components ultimately to be assembled into a particular completed whole, it can not be regarded as a part of any specified manufacture.

Similar evidence of dedication to an ultimate specific use influenced the conclusions in *Oxford University Press, N.Y., Inc.* v. *United States,*

*supra*, and *Swank, Inc.* v. *United States, supra,* that the articles there respectively under consideration, to wit, electrotype shells and belts, without buckles, though unfinished, were properly classifiable as if imported in their finished condition.

While the evidence in the instant case tends to show that the particular grade of jute yarn here under consideration has no substantial commercial use other than in the manufacture of white oakum, although the proof is by no means conclusive in this respect, it is questionable whether, as imported, it possesses the distinguishing characteristics indicative of dedication to that use. It is not so marked by manufacturing processes as to be identifiable as an unfinished stage of white oakum, but, seemingly, remains, until completion of the processing described by the witness Reynolds, as a mere material for making oakum. Under these circumstances, we are of opinion that the authorities relied upon by counsel for plaintiffs are distinguishable and that the principles expressed in the cases of *United States* v. *The Harding Co.*, 21 CCPA 307, T.D. 46830; *The Harding Co. et al.* v. *United States,* 23 CCPA 250, T.D. 48109; and *American Import Co.* v. *United States,* 26 CCPA 72, T.D. 49612, are more appropriately controlling.

The merchandise in the first *Harding* case, *supra,* was material in running lengths for making brake linings for automobile brakes. It was classified as manufactures of asbestos yarn in paragraph 1501(a) of the Tariff Act of 1930 and claimed to be unfinished parts of automobiles within the provisions of paragraph 369(c) of said act. It appears that all that remained to be done to convert the imported lengths of brake lining into automobile brake linings was cutting to required lengths and drilling of holes to correspond with the holes that are on brake shoes. The material was not, however, marked in any way to indicate where it should be cut, since brake linings normally vary in length.

While it is true that since the evidence in the case established that the material in issue was capable of being adapted to other commercial uses, it could not be held to be dedicated to use as brake linings and, for that reason, was regarded by the court as material, only, it is significant that the court, nevertheless, observed:

* * * But even if it could be said to be dedicated to the exclusive use of making brake linings for automobiles, it would be, nevertheless, a mere material for such use, just as silk cloth in the piece, designed to be used as linings for clothing, is a mere material out of which such linings are to be cut.

Proof in the second *Harding* case established that the brake lining material was exclusively used in the manufacture of brake linings for automobiles, and thus removed from consideration the question of commercial capability for alternative uses. But this additional evidence did not change the court's conviction that, in the form and condition

in which it was imported, this merchandise continued to be a material, and could not be classified as the article into which the material was subsequently manufactured.

The issue of the effect of exclusivity of use was squarely posed in the case of *American Import Co.* v. *United States, supra,* wherein lengths of silk fishing leader gut were held to be manufactures of silk in paragraph 1211 of the Tariff Act of 1930, rather than leaders, finished or unfinished, in paragraph 1535 of said act, despite evidence that, as imported, the chief, if not the exclusive, use of the material was the making of fishing leaders. The court's conclusion to that effect rested, in part, upon the dictum of the first *Harding* case, hereinabove quoted, and its own observations to the following effect:

* * * The mere fact that the instant merchandise is chiefly used, or for that matter exclusively used for leaders (and if it has any other use it is a fugitive one), does not take it out of the "material" class. Hundreds of articles might be suggested which are in the nature of material and which have found but one use. The mere fact that a thing has but one use does not require that it be considered as an article unfinished. If the material has been so far processed from the "material" stage to a partly-completed article, then it loses its character as material and takes on the characteristics of the article for which the material was intended.

There is nothing about the instant merchandise that characterizes it as oakum. It is a material which possesses qualities which make it suitable for use in the manufacture of oakum, and, doubtless, it is not much good for any other purpose, but it has not been shown to have been so processed as to bear unmistakable evidence of its intended ultimate use or to have had its potential use for other purposes destroyed. *Cf. Athenia Steel & Wire Co.* v. *United States,* 1 Ct. Cust. Appls. 494, T.D. 31528. As imported, it is the raw material for the manufacture of oakum, in the form and condition of jute yarns or rovings, single, coarser in size than 20-pound, and was properly so classified by the collector.

All claims in the instant protest are, therefore, overruled.

Judgment will be entered accordingly.