(C.D. 2530)

GITKIN Co. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 19, 1965)

*Barnes, Richardson & Colburn* (*Earl R. Lidstrom, Joseph Schwartz,* and *Thomas Brian Ketchum* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Morris Braverman,* trial attorney), for the defendant.

Before WILSON and NICHOLS, Judges; OLIVER, C. J., not participating

NICHOLS, Judge: The merchandise involved in this case is described on the invoices as "oval lauan slat folding doors," "oval lauan mahogany folding doors," and "Philippine mahogany folding doors." It was imported from Japan and entered at the port of New York in December 1960 and January 1961. Duty was assessed at 16⅔ per centum ad valorem under paragraph 412 of the Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373, supplemented by T.D. 52476, as manufactures of which wood is the component material of chief value. It is claimed that the merchandise is properly dutiable under said paragraph, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as wooden doors.

The pertinent provisions of the tariff act are as follows:

Par. 412 [as modified by T.D. 52373 and T.D. 52476]. Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:

    \*        \*        \*        \*        \*        \*        \*

    Other (except \* \* \*)_____ 16⅔% ad val.

Par. 412 [as modified by T.D. 54108]. Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:

    \*        \*        \*        \*        \*        \*        \*

                                                                 [B]

    Doors_____ 15% ad val.

Ralph Gitkin, treasurer of the plaintiff company, testified that he was familiar with the articles described on the invoices as "folding doors," since he had designed them and did the purchasing and placing of the orders. An illustration of such a door and a photograph of part of one were received in evidence as plaintiff's illustrative exhibits 1 and 2, respectively. The articles appear to consist of narrow vertical slats held together by threads or tapes. They are attached to and hang from a track. The track is apparently attached to the ceiling and the material hangs down to the floor in flexible folds. There is no track attached to the floor.

As Mr. Gitkin stated and as appears on the invoices, two sizes are involved here: One 32 inches by 80 inches and the other 36 inches by 80 inches. As imported, the merchandise includes with the slats and tapes, woven together, a kit of the necessary hardware for installation: The track, screws, a handle, and a chain which controls the accordion effect. The bulk of the door is of woven material of mahogany or lauan; at one end, is a solid bar of vinyl material or wood to be attached to the frame of the door and at the other a slightly heavier bar with which to pull the door, which slides on the track. The article can be attached to the right or left. It is made to fit a 3-foot opening and is 80 inches high, the standard height of doors.

Mr. Gitkin testified that his firm had started bringing in this merchandise in 1959 or 1960; that he had seen such articles used in hotels, homes, and department stores throughout the country; and that the most common use is to close closets, but that they can be used between rooms, as room dividers, or to close off one area from another. He explained that usage for the latter purposes would be by installation of the track on the ceiling.

Other evidence, consisting of commercial invoices (plaintiff's exhibit 3) and a group of newspaper advertisements (plaintiff's exhibit 4) will be discussed, *infra*.

Victor A. Dawson, who was formerly employed by Hough Manufacturing Corp., manufacturer of woven wood products and accordion doors of plastic, was called as a witness by the defendant. He testified that he had dealt with products similar to that depicted in plaintiff's illustrative exhibit 1 for 15 or 16 years, and had seen them used as closet or wardrobe closures, room dividers, for the concealment of utilities in recreational areas in schools, to separate divisions in cafeterias, and as window shades and cottage curtains. These uses were not all of the same sized articles as those involved herein. The dimensions herein, 80 inches by 32 or 36 inches, were, according to the witness, typical of articles used for door purposes and he called such items folding doors.

The two witnesses would appear not to have confined their testimony to articles of the dimensions involved in the protest. The court, on defendant's objection, had refused to consolidate another case involving merchandise which was similar, except for different dimensions, up to 60 by 96 inches, according to the statement of Government counsel. This ruling apparently was unexpected and its import in narrowing the variety of articles in litigation was not entirely clear to the witnesses, much of whose testimony related to merchandise not before the court. There does not seem to be any disagreement, whenever dimensions are clearly adverted to, that the dimensions of the merchandise here are characteristic of articles used as doors, not as

room dividers, or window shades, or to conceal utilities. Eighty inches is the standard door height.

Plaintiff says the issue is common meaning, no commercial designation having been claimed. The Government states the issue is whether the imported articles have been advanced to the point of being dedicated to door use and are chiefly used as doors. The joinder of issue between the parties is, therefore, less than perfect.

At the outset, we must consider what is meant by the term "door." We may exclude those uses of the word that allude to an opening in the wall rather than what may temporarily close the opening because obviously a mere void cannot be a dutiable article. Turning to possibly applicable definitions, we have Webster's New International Dictionary, unabridged, 1953 edition, defining "door" as follows:

1. The movable frame or barrier of boards, or other material, usually turning on hinges or pivots or sliding, by which an entranceway into a house or apartment is closed and opened; also, a similar part of a piece of furniture, as in a cabinet or bookcase.

The term "folding door" is defined by the same authority as:

A door that can be folded; also, one of two or more doors of full length filling a single opening; also, less properly, either of a pair of sliding doors between two rooms en suite.

Funk & Wagnalls New Standard Dictionary, 1956 edition, defines "door" as:

1. A hinged or sliding frame or piece of wood, metal, stone, or other material, generally rectangular, used for closing or opening an entrance or exit, as to a house, room, cabinet, or other enclosure.

Doors are named from their characteristics, as folding door, rolling d., sliding d., trap-d., etc.

These definitions refer to solid articles, a frame or barrier of boards, a frame or piece of wood, metal, stone, or other material. Of course, folding and sliding doors can be and often are solid; therefore, their inclusion without further description does not indicate that articles made of the materials and constructed in the manner of those before the court fall within the definition.

Hangings in doorways are not necessarily doors. They may be "curtains" or "portieres," which have been defined by lexicographers as follows:

curtain 1. A hanging screen intended to darken, conceal, or protect, or sometimes merely to be ornamental, usually admitting of being drawn back or up at pleasure; esp., drapery of cloth or lace at a window or round a bed; * * *.

portiere A curtain hanging across a doorway. [Webster's New International Dictionary.]

curtain A draping or covering, hanging loosely and readily adjustable, variously employed as to prevent the passage of light through a window or other opening, to screen a stage from the auditorium, or to hide some object from view; * * *.

**portiere** A curtain for use in a doorway, either instead of a door or as an ornament. [Funk & Wagnalls New Standard Dictionary.]

If the merchandise before the court is a "hanging screen," it cannot be a door, because we have held that in a tariff sense the terms "door" and "screen" are mutually exclusive. *United Enterprises et al.* v. *United States*, 41 Cust. Ct. 73, 76, C.D. 2023, appeal dismissed 46 CCPA 151. This merchandise consists of narrow slats woven together, and on some of the illustrations in the exhibits, it appears to hang in loose folds, as a curtain, drapery, or portiere would. Whether or not it is taut when closed cannot be determined, in the absence of a sample of the merchandise or more precise testimony than has been produced herein. On the record as presented, the article appears to have some characteristics of the ordinary wooden door and some characteristics of curtains or draperies.

The evidence to substantiate the claim that this merchandise is commonly known as a door includes an advertising brochure issued by plaintiff (plaintiff's exhibit 1), newspaper advertisements run by retail sellers (plaintiff's exhibit 3), and commercial invoices issued by plaintiff to its customers (plaintiff's exhibit 4). The trouble with this evidence is: First, it reflects too much plaintiff's own usage only. Even the advertisements were based on mats or copy furnished by plaintiff or its affiliate. Second, it proves too much. For example, exhibit 1 advertises: "Philippine mahogany folding doors," testified to be the merchandise at bar. But the exhibit, a brochure, says "use as room dividers, closures for closets or pullman kitchens, separate utility areas," and the picture shows one of the articles in use, apparently as a room divider. It is, therefore, clear that, in plaintiff's usage, in preparing advertising copy, a room divider is a door. But, in the decision of this court, cited above, use as a room divider is held to be a screen, not a door, use. We do not find that the merchandise here involved is chiefly, or even substantially, used as room dividers. The dimensions are wrong for that. Merchandise in other protested entries, not consolidated for trial, may be so used. We refer to this evidence only as showing that plaintiff's use of the word "door" is peculiar to itself and not necessarily in accord with common speech, as interpreted by this court hitherto.

The tariff provision for "doors" is an exception, carved out of a paragraph covering "manufactures of wood" by the trade agreement negotiators. As such, it must be strictly construed and not extended by interpretation to ambiguous situations. *Joleo Impex Co.* v. *United States*, 45 Cust. Ct. 6, C.D. 2189.

Here, the collector has classified the merchandise as "manufactures of wood" and not as doors. It is presumed that he found every fact to exist necessary to sustain his classification. *United States* v. *Zoltan Erdosi*, 40 CCPA 137, C.A.D. 509. The record before us is lacking

in sufficient factual data to overcome the correctness of that presumption. As stated, no sample of the merchandise was produced, and much of the evidence reflects plaintiff's own peculiar usage of the term "door." The dictionary definitions do not show that articles such as those before the court fall within the common meaning of the term "door." Nor does the testimony establish that these articles are chiefly used as doors throughout the United States. It may be that they constitute a new type of article, denominated as doors in modern speech, but, in order to prevail, plaintiff has the burden of establishing this positively, and since it has failed to do so, the protest must be overruled.

Judgment will be rendered accordingly.