MARSHALL FIELD & CO. *v.* UNITED STATES (No. 3538)[1]

United States Court of Customs and Patent Appeals, November 30, 1932

*James W. Bevans* for appellant.

*Charles D. Lawrence*, Assistant Attorney General (*John F. Kavanagh* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument October 5, 1932, by Mr. Bevans and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Certain goods were imported by the appellant at the port of Chicago which were assessed by the collector as toys under the provisions of

[1] T. D. 46037.

paragraph 1513 of the Tariff Act of 1930. The importer protested, claiming that the goods contained in certain cases, which are specified in the protest by numbers, were dutiable under various paragraphs of said act. The goods, as imported, were table tennis and lotto sets and articles for filling. The United States Customs Court sustained the classification made by the collector, and the appellant appeals. Upon its appeal it abandons its claim as to the articles for filling and contends here that the lotto sets should have been found dutiable at 30 per centum or 35 per centum ad valorem under paragraph 1413 as manufactures of paper as to some items, and as to others at 33⅓ per centum ad valorem under paragraph 412 as manufactures of wood. As to the table-tennis sets the importer claims these should have been found to be dutiable at 30 per centum ad valorem under paragraph 1502 of said act as balls, rackets, and other equipment used in conjunction therewith. A stipulation was entered into and appears in the record fixing the chief value of the lotto sets to be of paper and wood, respectively.

A motion to amend the protest was filed by the appellant on March 23, 1931, by which motion it was sought to incorporate the case numbers of seven additional cases of merchandise into the protest. This motion was taken under advisement by the court below and on final decision was denied.

The relevant portions of paragraph 1513 are as follows:

PAR. 1513. * * * all other dolls, parts of dolls (including clothing), doll heads, toy marbles, toy games, toy containers, toy favors, toy souvenirs, of whatever materials composed, air rifles, toy balloons, toy books without reading matter (not counting as reading matter any printing on removable pages), other than letters, numerals, or descriptive words, bound or unbound, and parts thereof, garlands, festooning, and Christmas tree decorations made wholly or in chief value of tinsel wire, lame or lahn, bullions or metal threads, and all other toys, and parts of toys, not specially provided for, 70 per centum ad valorem. As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this act.

One witness was called on behalf of the importer, Lester C. Twitchell. His witness was the assistant merchandise manager in the toy section of appellant. As to the lotto games, this witness testified that such games were imported in various qualities, some being quite low in price and some higher. He stated, in general, that as to any of the sets "an adult could play with it just as well as a child." He further stated that the lotto games imported were the "regular lotto game," and that there was nothing relative to the lotto sets imported which adapted them chiefly or particularly for children. He further stated that the imported articles, both lotto and table tennis, were

sold in the toy department of appellant. The following questions and answers were given by the witness:

Q. Would you say the principal use of lottoes was by children rather than adults?—A. I would say they can be used equally either by children or adults. Adults play lotto in many different forms. They play it in the old form as it is here and also in the new forms, such as bridge keno and joker keno.

Q. This set you offered, is that in a form suitable for an adult only?—A. No; not necessarily. It is the fundamental principle of lotto in the old original form.

Relative to the table-tennis sets the witness stated, and the sample discloses, that each of these sets consists of six substantial and well-made balls of regular size for playing the game, two rackets, or paddles, made in a substantial way, each about 11 inches in length, 5¾ inches in width, and a table net, substantially made and mounted on rods, with durable metallic clasps for attachment to the table. These sets retailed for about $3.50 each. The witness testified that the character of these sets varied, some being more elaborate and expensive and some much cheaper; that a ping-pong paddle would be slightly larger, wider and longer and better finished than the paddles in the sets here involved; that the ping-pong sets used by professionals differed from this set only in quality; that the imported sets can be used in the same manner as professional ping-pong sets. He further stated that the game of ping-pong is played as frequently by adults as by children, and that most championship games were played by adults, and that few people under 15 years of age played ping-pong. He also stated that ping-pong tables are in use in many athletic clubs.

Each of the imported lotto sets consists of 48 cards, each card being approximately seven inches in length, four inches in width, and having three rows of numbers. In each set there is also a bag containing 90 round wooden counters bearing consecutive numbers. The set also contains a box having 30 round glass disks used for placing on the numbers on the cards. Instructions accompany each set. The cards are substantially made of stiff pasteboard.

The importer assigns error in the refusal of the trial court to permit amendment of its protest. The entry was liquidated by the collector on November 20, 1930, and the motion to amend was filed on March 24, 1931, a date greatly exceeding the statutory limit of 60 days fixed for filing protest under section 514 of said act.

The trial court justifies its refusal to grant such motion by the citation of a uniform line of decisions of that court: *Monroe-Goldkamp Co.* v. *United States*, T. D. 41423, 49 Treas. Dec. 421; *Geo. Borgfeldt & Co.* v. *United States*, Abstract 10537, 57 Treas. Dec. 1000; *Huber Co.* v. *United States*, Abstract 13004, 58 Treas. Dec. 956.

These cases held, in general, that a motion to amend a protest by the inclusion of goods not originally involved will not be allowed after

the statute has run, it being assumed that by the running of the statute the importer's claims are barred as to those goods.

Such, also, has been the view of this court: *Benjamin Iron & Steel Co.* v. *United States,* 2 Ct. Cust. Appls. 159, T. D. 31677; *Lloyd's Subagent* v. *United States,* 19 C. C. P. A. (Customs) 408, T. D. 45576.

Indeed, it may be a serious question whether jurisdiction would have been conferred upon the trial court had the amendment been allowed. *Akeroyd & Son* v. *United States,* 19 C. C. P. A. (Customs) 249, T. D. 45341. There was no error in the refusal of the trial court to grant this motion.

The question then presented is whether the court below erred in sustaining the classification by the collector of these lotto and table-tennis sets as toys. Under the tariff act of July 24, 1897, we announced, in *Illfelder* v. *United States,* 1 Ct. Cust. Appls. 109, T. D. 31115, the following definition of the word "toy":

In common speech, and as popularly understood, a toy is essentially a plaything, something which is intended and designed for the amusement of children only, and which by its very nature and character is *reasonably* fitted for no other purpose.

That definition continued to be accepted during succeeding tariff acts, including the Tariff Act of 1922.

In the Tariff Act of 1930, however, the Congress announced a new definition, namely, that a toy was an article—

*chiefly used* for the amusement of children, whether or not also suitable for physical exercise or for mental development. (Italics ours.)

Having this statutory definition in mind, the court below found that the collector's classification raised the presumption that these lotto and table-tennis sets were chiefly used for the amusement of children; that it was, therefore, incumbent upon the importer to establish by evidence that they were not so chiefly used; that it had failed to do so, and that, therefore, its claims must be rejected.

It has been announced as the rule of law by this court that the presumption of correctness attaching to the classification of the collector can not be regarded as having evidentiary value and can not be weighed against the evidence produced on the trial. *Morse Bros.* v. *United States,* 13 Ct. Cust. Appls. 553, T. D. 41432; *United States* v. *Marshall Field & Co.,* 18 C. C. P. A. (Customs) 469, T. D. 44761.

This being the law, it follows that if the appellant introduced sufficient proof to establish, *prima facie,* that the lotto sets and table-tennis sets were not chiefly used for the amusement of children, its protest should have been sustained. In considering the record the court below and this court may consider the samples which are in evidence. In many cases these are potent witnesses. *United States* v. *May*

*Department Stores,* 16 Ct. Cust. Appls. 353, T. D. 43090; *United States* v. *Frankel Imp. Co.,* 18 C. C. P. A. (Customs) 188, T. D. 44378.

We are of opinion that the importer has sustained the burden of proof resting upon him as to the table-tennis sets. These sets are, from their appearance, and from the testimony of the witness Twitchell, not toys but are of proper size and construction for the playing of the game ordinarily known as ping-pong. This game, according to the testimony, is not a game exclusively, or even chiefly, used for the amusement of children but is a game of skill, ordinarily played by those above the age of childhood, and in which professional players engage. We think the importer sustained the burden of proof resting upon it as to these table-tennis sets and that they should have been classified as claimed in its protest.

As to the lotto games the evidence in the record is not sufficient to overcome the presumption of correctness attaching to the collector's classification. The most that can be said of the testimony of the witness Twitchell is that it shows the possibility of use of the lotto games by adults equally with children. It does not, however, show what the use of them is, either partially or chiefly. In the absence of evidence on this point we are not justified in this case in determining from an inspection of the sample that the importer has sustained the burden of proof resting upon it.

For the reasons assigned the judgment of the United States Customs Court is *modified* and the cause is *remanded* with directions to sustain the importer's protest as to the table-tennis sets under paragraph 1502 of said act. Reclassification will be made only as to the imported goods in cases numbered 9846, 9847, 9855, 9874, 9875, 86852, 86854, and 86855. In all other respects the judgment of said court is *affirmed.*