**KAROWARE, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 77–14.**

United States Court of Customs and Patent Appeals.

Oct. 20, 1977.

---

78

Carol A. Calhoun, New York City (Shaw & Stedina, New York City), attorneys of record, for appellant; Charles P. Deem, New York City, of counsel.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Chief, Customs Section, New York City, Madeline B. Cohen, Washington, D. C., for appellee.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and MORGAN FORD, Associate Judge, United States Customs Court.

MARKEY, Chief Judge.

Appeal from judgment of the Customs Court, 77 Cust.Ct. 112, C.D. 4681, 427 F.Supp. 402 (1977), sustaining the classifications of the Customs Service. We affirm.

*Background*

Appellant Karoware, Inc. (Karoware), an importer of barware, brought two actions, later consolidated, in which it alleged misclassification of wooden wine racks, and bars. Evidence at trial concerned: (1) wonder and book bars, classified as sets under TSUS Items 651.75 [1] and 546.52, and claimed as household utensils of wood under TSUS Item 206.97; (2) keg, tavern, castle, and 807.00, claimed under case law as entireties with the co-imported bars; and (5) wood not specially provided for under TSUS Items 206.97 and 207.00, and claimed as furniture of wood under TSUS Item 727.35; (3) bookshelf bars, classified as boxes, cases, or chests of wood under TSUS Item 204.40, and claimed as furniture of wood under TSUS Item 727.35; (4) glasses and decanters, classified as glassware under TSUS Items 546.52 and 807.00, or 546.54 and 807.00, claimed under case law as entireties with the co-imported bars; and (5) wine racks, classified as household utensils of wood under TSUS Item 206.97, and claimed as furniture of wood under TSUS Item 727.35.

The imported bars are made of hardwood and are decorative, resembling the things after which they are named, and containing shelves with recesses precut to hold glasses and decanters. To facilitate hanging, the keg, bookshelf, tavern, and castle bars have hooks at the top and the roll top bar has precut holes in the back. The bars range from 14 to 20 inches in height, 4½ to 13 inches in depth, and 16 to 25½ inches in width. The wine rack, formed of two oval pieces of wood with holes for wine bottles and a stand, is 24 inches high, 14 inches wide, and 11 inches deep.

All the bars are imported with glasses and decanters. The glasses are interchangeable in all the bars except the roll top. The wonder and book bars are imported with a corkscrew, bottle opener, and mixing spoon. A pick accompanies the wonder bar, and a strainer comes with the book bar.

Karoware's evidence consisted chiefly of samples of the imported merchandise and of the testimony of Karoware's warehouse and traffic manager, William Shulman, and of its president and sole stockholder, Julius Baller.

Shulman testified that the wine racks are always displayed by Karoware on the floor; that they are displayed at furniture and woodware shows; that the bars were suitable for hanging on a wall, and were so displayed at trade shows; that the tavern and castle bars, by reason of their design, must be hung on a wall; that the bars are designed to accommodate specific sizes of

1. TSUS 651.75:

Sets (except sets specially provided for) which include two or more of the tools, knives, forks, spoons, or other articles provided for in different rate provisions of this subpart ... .. ............. ..... ................. The rate of duty applicable to that article in the set subject to the highest rate of duty.

glassware; that the glassware and bars are imported and sold as units; and that the glassware is not sold separately, except that Karoware stocks replacements to meet requests of customers. Baller testified that he had seen the bars displayed at a number of department stores, none of which sold the bars and glassware separately; that he knew of no place which sold the glasses imported by Karoware; that the decanters are not obtainable elsewhere because the mold is Karoware's; that he was involved with the design of the bars; and that they are designed, imported and sold as units. Replacement glasses are shipped with the bars by the supplier. Karoware pays a unit price for the bars and glassware, but the invoices show a breakdown for tariff purposes. He also testified that in homes, the bars with hooks are hung on the wall, and the wine racks are probably put on the kitchen floor, locations other than on the floor being likely to result in breakage of the bottles; that at trade shows he had observed the bars displayed on a wall; and that he had never seen the glassware used without the bars.

### The Customs Court

In considering the wine racks and bars, the Customs Court looked to *Morris Friedman & Co. v. United States,* 69 Cust.Ct. 184, C.D. 4392, 351 F.Supp. 611 (1972), and its support of the proposition that "the scope of the 'furniture' provision of the tariff schedules is governed by the definition in headnote 1,[2] that the headnote is both exclusionary and restrictive, and that it embraces only those articles expressly describ-

ed." Citing the Brussels Nomenclature, the court determined that "Congress intended [by its use of 'designed' in the headnote] to include only those articles that were particularly and especially constructed to be placed on the floor or ground." Citing *Albert E. Price, Inc. v. United States,* 68 Cust.Ct. 50, C.D. 4334 (1972), aff'd C.A.D. 1095, 476 F.2d 1354, 60 CCPA 127 (1973), the court stated that "the criterion for an article to be embraced by the words 'kitchen cabinets and similar cupboards' is that it is capable of being *permanently fastened* to the wall and not movable at will, and not merely its shape, size, or dimensions * *." (Emphasis in original.) Because it found the wine rack to be equally suitable for table or floor use, and because it found that the bars do not have features for permanent wall attachment, but are movable at will and designed to rest or stand on other furniture, the court affirmed the regional commissioner's classification.

Regarding glassware, the court found much of the testimony of Karoware's witnesses unconvincing, and declined to find "that plaintiff succeeded in establishing that the bars and glassware were designed as a unit." The court found that the bars and glassware retain their separate identity and function.

In considering the "sets" classification, the court referred to the *Summaries of Trade and Tariff Information,* Schedule 6 (1968) (*Summaries*) as a proper and persuasive source for resolving questions of meaning and scope in tariff provisions. From a relevant excerpt[3] the court con-

---

2. Schedule 7, part 4, subpart A, headnote:

  1. For the purposes of this subpart, the term "furniture" includes movable articles of utility, designed to be placed on the floor or ground, and used to equip dwellings, offices, restaurants, libraries, schools, churches, hospitals, or other establishments, aircraft, vessels, vehicles, or other means of transport, gardens, patios, parks, or similar outdoor places, even though such articles are designed to be screwed, bolted, or otherwise fixed in place on the floor or ground; and kitchen cabinets and similar cupboards, seats and beds, and sectional bookcases and similar sectional furniture, even though designed

to be fixed to the wall or to stand one on the other; * * *. [Footnote added.]

3. The sets covered by this summary (TSUSA item 651.7560) are those having two or more of the tools provided for in the aforementioned subpart 3E; these sets may include items not provided for as separate articles under subpart 3E. Sets composed wholly of knives, forks, and spoons, and pedicure and manicure sets are covered in separate summaries in this volume (6:6). The following are typical of the sets covered in this summary: Barbecue sets consisting of a turner, fork, tongs, basting brush, and box; kitchen tool sets consisting of a potato masher, icing

cluded: "It is apparent from the *Summaries* that the 'sets' provision of item 651.75 may include articles not provided for as separate articles in the tools, cutlery, forks and spoons provision of subpart 3E. Furthermore, * * * [the language] is indicative of an intention to include in item 651.75 sets having dissimilar items which are usually associated in their use, and complement one another." The court found that the wonder and book bars, and the glassware and bar tools held by them were "intended to be used in conjunction with, and to complement one another in the storage, preparation and serving of beverages." The court also cited that the test enunciated in *Tanross Supply Co., Inc. v. United States,* C.A.D. 1000, 433 F.2d 1332, 58 CCPA 26 (1970),[4] a case involving items used in preparing specimens for viewing under microscopes, and held that under *Tanross* and the *Summaries,* the book and wonder bars, together with the glassware and bar tools, were properly classified as sets.

### Issues

■ The issues are whether the Customs Court erred in holding that (1) the wine racks and the keg, tavern, castle, roll top, and bookshelf bars are not furniture within the meaning of the tariff schedules, (2) the bars are not dutiable as entireties with the glassware, and (3) the book and wonder bars were properly classified as "sets."[5]

### OPINION

**(1) *The wine racks and bars are not furniture***

Respecting wine racks, Karoware contends that the headnote definition, "designed to be placed on the floor" means "intended to be used on the floor." Karoware argues that the testimony of its witnesses proves the wine racks were intended for floor use, and that an article so intended does not become something other than furniture by mere susceptibility of placement elsewhere. It is also alleged that the legislative history cited by the Customs Court does not preclude the likelihood that "designed" was used by Congress in the sense of "intended."

■ The *Tariff Classification Study,* Schedule 7 (1960) 242, states that "[t]he concept of furniture embraced in this sub-

spatula, basting spoon, turner, ladle, pot fork, and rack; carpenters' sets containing a screwdriver, hammer, adjustable wrench, measuring tape, combination pliers, utility knife, and putty knife; bar sets containing an ice pick, double jigger, spoon, can and bottle opener, strainer, cork screw, stand, and box; miniature garden tool sets consisting of a fork, spade, and cultivator; file sets; ignition wrench and plier sets; and sets of scissors. Cases, boxes, or containers of the types ordinarily sold at retail with the tools or other articles in the set are classifiable with such articles if imported therewith. [*Summaries,* at 148.]

4. This court stated the test:

As the court below noted, "Item 651.75 of the Tariff Schedules of the United States. with which we are here concerned projects a new concept in the assessment of import duties." The word "sets" as used therein certainly is not, as *Tanross* would have us hold, simply a synonym for "entireties," but it is not easy to say just what Congress did mean when it used the word. There is very little legislative history to guide us in interpreting this new provision, but what there is in no way suggests that the word "set" should be given, in this context, any meaning other than its usual meaning of "A number of things of the same kind ordinarily used together; a collection of articles which naturally complement each other, and usually go together; an assortment; a suit; as, a *set* of chairs, of china, of books, of teeth, etc." Webster's New International Dictionary (2d ed. 1956). Since the # 1000 Educational Kits are "a collection of articles which naturally *complement* each other, and usually go together," all being items used in connection with the preparation of specimens for viewing under a microscope and not being simply an aggregation of disparate articles imported together for shipping convenience, we agree with the court below that they are "sets" within the meaning of TSUS Item 651.75. [433 F.2d at 1335, 58 CCPA at 30–31 (footnotes omitted).]

5. Plaintiffs in classification cases have the twofold burden of proving that (1) the administrative classification was wrong and (2) the claimed classification is right, *United States v. New York Merchandising Co.,* C.A.D. 1004, 435 F.2d 1315, 58 CCPA 53 (1970). Because we affirm the judgment of the Customs Court, we need consider no other issues.

part is stated as a definition in Headnote 1." The headnote thus comprises a statutory definition within which the merchandise must be embraced. *Albert E. Price, supra,* 476 F.2d at 1356, 60 CCPA at 129. On its face, the headnote use of "designed" is ambiguous, being susceptible of interpretation as "intended" or as "particularly and especially constructed." The remaining text of the Tariff Schedules offers no clarification. The *Tariff Classification Study* is a prime reference for construction of the Tariff Schedules, but it is silent on the language in question.

In *F. L. Smidth & Co. v. United States,* C.A.D. 958, 409 F.2d 1369, 56 CCPA 77 (1969), this court approved use of the explanatory notes of the Brussels Nomenclature, from which much of the statutory phraseology was derived, in construing an ambiguous item. It must appear, however, that the language being construed was derived from the Brussels Nomenclature. *Herbert G. Schwarz, dba Ski Imports v. United States,* C.A.D. 971, 417 F.2d 1391, 57 CCPA 19 (1969).

■ Chapter 94.00 of the Explanatory Notes to the Brussels Nomenclature 1955, vol. 3, at 1145–46 (1964), contains a definition of "furniture," part (A) of which is apparently the source of the headnote, being similar to it in language:

For the purposes to [sic] this Chapter, the term *'furniture'* is to be taken to mean:

(A) Any 'movable' articles (*not* included under other more specific headings of the Nomenclature), which have the essential characteristic that they are *constructed for placing on the floor* or ground, and which are used, mainly with a utilitarian purpose, to equip private dwellings, hotels, theatres, cinemas, offices, churches, schools, cafes, restaurants, laboratories, hospitals, dentists' surgeries, etc., or ships, aircraft, railway coaches, motor vehicles, caravan-trailers or similar means of transport. (It should be noted that, for the purposes of this Chapter, articles are considered to be 'movable' furni-

ture even if they are designed for bolting, etc., to the floor, e. g., chairs for use on ships.) Similar articles (seats, chairs, etc.) for use in gardens, squares, promenades, etc., are also included in this category.

(B) The following even if they are designed to be fixed to the wall or to stand one on the other:

(i) Kitchen cabinets and similar cupboards.

(ii) Folding seats and beds.

(iii) Unit bookcases and similar unit furniture.

*Except* for the goods referred to in subparagraph (B) above, the term 'furniture' is to be taken *not to apply* to articles used as furniture but designed for placing on other furniture or shelves or for hanging on walls. It therefore follows that the present Chapter *does not cover* other wall fixtures such as coat and hat racks, wall racks, key-boards, clothes-brush hangers and newspaper racks, nor furnishings such as radiator screens. Similarly, the Chapter *excludes* the following types of goods *not designed for placing on the floor:*—small articles of cabinetwork and small furnishing goods of wood (*heading 44.27*), and office equipment of base metal (e. g., sorting boxes, paper trays) (*heading 83.04*). [Emphasis added.]

"Designed for placing on the floor" is thus seen to be synonymous with "constructed for placing on the floor," and the Customs Court cannot be charged with error in finding that "Congress intended to include only those articles that were particularly and especially constructed to be placed on the floor or ground."

■ The only evidence offered by Karoware was the testimony of Shulman and Baller that they had observed the wine rack in use on the floor, and that use on a table would result in damage were the wine rack knocked to the floor. The record supports the Customs Court's findings that the testimony is not convincing, and that the wine rack could easily be used on a table. As has been often said, representatives samples of the merchandise can be potent witnesses.

*Marshall Field & Co. v. United States,* 45 CCPA 72, C.A.D. 676 (1958). Karoware having failed to meet its burden of proof on the claimed classification of the wine racks as furniture, the decision of the Customs Court rejecting that claim is affirmed.

Karoware bases its furniture claim for the keg, tavern, castle, roll top and bookshelf bars (bars) on the argument that the bars are "kitchen cabinets and similar cupboards * * * designed to be fixed to the wall" within the meaning of the headnote, because they are describable as "cupboards," a general term, and because they are similar in significant respects to kitchen cabinets. The "permanent attachment" criterion employed by the Customs Court is here urged to have been erroneously derived from our opinion in *Albert E. Price, supra.*

We agree that "cupboard" is a general term. However, the headnote does not define furniture as including "cupboards" generally; it defines furniture as including "kitchen cabinets and *similar* cupboards." (Emphasis added.) Whether the bars may be cupboards in the dictionary sense of the word is here irrelevant. The Customs Court was correct in finding that the bars are not kitchen cabinets. The controlling factor is that the bars are not cupboards *similar* to kitchen cabinets. Although the bars fall within size and price ranges of commercially available kitchen cabinets, they are not similar in use. Kitchen cabinets are used for storage and arrangement of a broad range of articles. The bars are designed and used exclusively for storage of the glassware imported with them, and the preformed recesses for holding the glassware precludes the owner from devising his own arrangement, and from using the bars to store other articles.

■ In *Albert E. Price* we said, quoting the Customs Court, that "the headnote discussion of furniture was, on its face, intended to certify the inclusion of furniture which was permanently fastened to the premises, either on the floor or on the walls, as opposed to furniture which was movable at will." 476 F.2d at 1356, 60

CCPA at 129. The qualification "even though" in the headnote, evidences the intent of Congress to include as furniture, articles designed to be fixed to the wall, and to distinguish them from those articles included as furniture but designed to be placed on the floor. To fall within the headnote definition, an article must be designed to be placed on the floor or ground, or to be fixed to the wall, or to stand on another article of sectional furniture.

■ When we said in *Albert E. Price, supra,* that we shared the view of the Customs Court that "kitchen cabinets and similar cupboards were mentioned as examples of furniture which were *capable* of permanent placement," (emphasis added) we did not intend to change that meaning. For the bars to fall within the headnote definition, therefore, they must be constructed to be fixed to the wall, a requirement which connotes more than the ability to be merely hung on a wall. Kitchen cabinets and similar cupboards are fixed to the wall and are truly fixtures in the legal sense; their attachment is not a mere hanging—it is permanent. We agree with the Customs Court that the bars "do not have features for their permanent attachment to the wall." The presence of hooks, or holes, does not enable a bar to be considered as "designed to be fixed to the wall." The decision of the Customs Court with respect to classification of the keg, tavern, castle, roll top and bookshelf bars is therefore affirmed.

(2) *The bars are not dutiable as entireties*

An often-quoted statement of the doctrine of entireties appears in *Altman & Co. v. United States,* 13 Ct.Cust.Appls. 315, T.D. 41232 (1925) at 318, a case involving women's corsets and lace trimmings:

> [I]f an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate

packages, and even though said parts might have a commercial value and be salable separately.

Karoware argues that the bars and glassware comprise a new article of commerce.

*United States v. Hensel, Bruckmann & Lorbacher, Inc.,* 22 CCPA 281, T.D. 47330 (1934) and *United States v. E. Leitz, Inc.,* 22 CCPA 277, T.D. 47329 (1934),[6] in which this court dealt with whether articles and their cases comprised new articles of commerce dutiable as entireties,[7] are controlling here. *Hensel* involved binoculars and their leather cases; *Leitz* involved wooden cases covered with decorated paper and the microscopes and accessories contained therein. In *Hensel,* the parties stipulated that:

> [T]he merchandise covered by the above-entitled protest consists of leather cases designed to hold prism binoculars; that said cases were imported with the binoculars they are designed to hold; that when such binoculars are in actual use they are removed from the cases, said cases performing no function excepting to hold the binoculars as a protection and to afford a convenient method of carrying them; that said cases and binoculars are not sold separately in this country but always together; that not all binoculars sold in this country are contained in cases * * *. [22 CCPA at 283.]

In *Leitz,* the parties stipulated that:

> [T]he merchandise covered by the above-entitled protests consists of cases composed of wood covered with uncoated paper with the surface decorated with a design * * *; that the wood is the component material of chief value; that said cases are designed to hold and afford a convenient method of carrying microscopes and accessories therefor; that said cases were imported with the microscopes they are designed to hold, and are sold in this country with said microscopes and not separately; that when said microscopes are used they are removed from the cases; that said cases perform no function in the actual use of the microscope but are solely used for the holding and carrying of the microscopes. [22 CCPA at 279.]

Like the cases in *Hensel* and *Leitz,* the present bars are designed to hold particular items, in this instance glassware and other bar accessories; the bars were imported with the items; in use, the glassware is removed from the bars; the bars and the items are not sold separately in this country but always together (except for item replacements sent to customers upon request); and the items can be purchased in this country separate from bars.

In *Hensel* we held:

> [T]hat the involved cases and the binoculars contained in them are not dutiable as entireties. They were not designed to be, nor are they capable of being, assembled together to make a new article having a new name, character, or use. On the contrary, each is a separate, distinct, and complete entity, the cases being designed merely as suitable containers for the binoculars when not in use during, and subsequent to, their transportation to the United States. That the doctrine of entireties is not applicable to the involved merchandise is so apparent that we deem it unnecessary to prolong this discussion. See *United States v. Kronfeld, Saunders, Inc.,* 20 C.C.P.A. (Customs) 57, T.D. 45679, and cases cited therein. [22 CCPA at 285.]

■ For the reasons stated in *Hensel,* we hold that the imported glassware and bars are not dutiable as entireties.

---

**6.** *Hensel* and *Leitz* were decided concurrently. The decision of *Hensel* was held to be controlling in *Leitz.*

**7.** That *Hensel* and *Leitz* arose under a previous tariff schedule does not affect their applicability to the present case. As noted in *Tanross,*

the doctrine of entireties survives unaffected by the passage of new tariff schedules, "as a judicially created rule of classification applicable to cases not involving such clearly supervening congressional intent." 433 F.2d at 1335 n. 5, 58 CCPA at 30 n. 5.

*(3) The book and wonders bars were properly classified as "sets"*

In *Tanross,* we said:

There is very little legislative history to guide us in interpreting this new provision, but what there is in no way suggests that the word "set" should be given, in this context, any meaning other than its usual meaning of "A number of things of the same kind ordinarily used together; a collection of articles which naturally complement each other, and usually go together; an assortment; a suit; as, a *set* of chairs, of china, of books, of teeth, etc." Webster's New International Dictionary (2d ed. 1956). [433 F.2d at 1335, 58 CCPA at 30–31 (footnote omitted).]

Karoware argues that although the bar tools themselves form a set within the meaning of TSUS Item 651.75, the "fitted" bars, which include the glassware and tools, do not form a set because they do not "include two or more of the tools, knives, forks, spoons, or other articles provided for," and because they do not constitute "a number of things of the same kind ordinarily used together" or an "assortment." Similar arguments were resolved in *Tanross.*

The merchandise involved in *Tanross* included educational kits containing laboratory beakers, test tubes, chemicals, a plastic-handled knife, a needle probe, a dissecting board, an instruction book, and other items used in connection with preparation of specimens for viewing under a microscope (but not containing a microscope). There we held:

Since the # 1000 Educational Kits are "a collection of articles which naturally complement each other, and usually go together," all being items used in connection with the preparation of specimens for viewing under a microscope and not being simply an aggregation of disparate articles imported together for shipping convenience, we agree with the court below that they are "sets" within the meaning of TSUS Item 651.75. [433 F.2d at 1335, 58 CCPA at 31.]

If the articles fulfill the requirement of naturally complementing each other, they need not be of the same kind. There is ample evidence in the present record to support the finding of the Customs Court that the bars, glassware, and tools were intended to be used in conjunction with, and to complement, one another.[8]

The bars have shelves to hold both glasses and decanters. The book bar is equipped with several permanent clamps designed to hold the bar tools. In the wonder bar they may be stored in a bottom drawer. A novelty feature of the wonder bar is that it automatically opens when the bottom drawer is pulled out. [77 Cust.Ct. at 2, 427 F.Supp. at 415.]•

It was argued in *Tanross* that a "set" is not dutiable under Item 651.75 if the unit in which the articles are imported and sold contains not only two or more of the "articles provided for," but also contains many other articles not provided for. Interpreting the words "which include" non-restrictively, we held that the statutory language:

[B]rings under TSUS Item 651.75 any "set" containing two or more of the "articles provided for in different rate provisions of * * * [the subpart including Item 651.75]" regardless of how many objects not so provided for may be in the "set." There is no requirement in TSUS Item 651.75 that a "set" not be classified thereunder unless it is made up "substantially entirely," or even "predominantly" of "articles provided for in different rate provisions of * * * [the subpart in which Item 651.75 is found]," and we are not disposed to read such a requirement into it. [433 F.2d at 1335–36, 58 CCPA at 31 (footnote omitted).]

Under *Tanross,* it is therefore irrelevant that the bar tools make up a set within the context of the "fitted" bars, as long as the "fitted" bars themselves make up a set.

■ Having found that the "fitted" bars consist of a "collection of articles which naturally complement each other" as set

---

8. This conclusion has no relation to Karoware's "entireties" claim. As said in *Tanross,* "sets" is not a synonym for "entireties." 433 F.2d at 1335, 58 CCPA at 30.

forth in *Tanross,*[9] we affirm the Customs Court's decision that they are dutiable as sets.

### Conclusion

The Customs Court was correct in holding that the keg, tavern, castle, roll top and bookshelf bars and the wine racks are not furniture, that the bars are not dutiable as entireties with the glassware, and that the

book and wonder bars were properly classified as "sets." Accordingly, the judgment of the Customs Court is *affirmed.*

---

**9.** The *Summaries of Trade and Tariff Information* (1968), discussed extensively here by the parties and by the Customs Court, are not evidence of congressional intent, having been prepared subsequent to the statute. Hence, we do not refer to them here (nor did we in *Tanross*) for interpretation of TSUS Item 651.75.