**WESTERN STATES IMPORT CO., INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Slip Op. 96–96.

Court No. 93–09–00652.

United States Court of International Trade.

June 14, 1996.

Jenner & Block, Washington, DC (Brock R. Landry, John B. Morris, Jr. and Mark D. Harris), for plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, DC; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, New York City (James A. Curley), Washington, DC; Office of the Assistant Chief Counsel, U.S. Customs Service (Chi S. Choy), New York City, of counsel, for defendant.

Collier, Shannon, Rill & Scott, Washington, DC (Michael R. Kershow and John B. Brew), for the Bicycle Manufacturers Association of America, Inc., amicus curiae.

*Opinion*

AQUILINO, Judge:

In this action, which has been designated a test case pursuant to CIT Rule 84(b), the plaintiff contests classification of its merchandise by the U.S. Customs Service under subheading 8712.00.35 of the Harmonized Tariff Schedule of the United States ("HTS") ("Bicycles having both wheels exceeding 63.5 cm in diameter: Other"), contending that its cycles with such wheels are correctly classifiable under immediately preceding subheading 8712.00.25 ("If weighing less than 16.3 kg complete without accessories and not designed for use with tires having a cross-sectional diameter exceeding 4.13 cm"). The prescribed rate of duty under that subheading is 5.5% *ad valorem* as opposed to the eleven percent actually assessed by Customs.

**I**

Unsuccessful protest of the Service's classification and resultant duty assessment has led the plaintiff to now interpose a motion for summary judgment pursuant to CIT Rule 56.

The defendant counters with a cross-motion for similar summary relief.

The court's jurisdiction is predicated upon 28 U.S.C. § 1581(a). Its Rule 56(i) requires "a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Such statement by the plaintiff ("WSI") is, in part, as follows:

6. WSI designs, imports into the United States, and sells through retail distributors ... three models of bicycles under the "Diamond Back" brand name, called the "Approach," "Cross Campus," and "Cross Country" ... [the "WSI Models"]. Each of these bicycles is described as a "cross" or "hybrid" model because it combines the features of a road bike and a mountain bike....

7. The ... WSI Models at issue have the following features:

A. Both wheels of the bicycle exceed 63.5 cm in diameter;

B. The bicycle weighs less than 16.3 kg complete without accessories;

C. The bicycle is equipped with tires having a cross-sectional diameter of 1.5 inches.

. . . . .

8. Each WSI Model is imported ... partially assembled in individual cartons. The carton contains a set of 700c × 38c tires, having a cross-sectional diameter of 1.5 inches, as well as all other parts of the bicycle....

9. WSI selected and specified K–164 700c × 38c gumwall tires as having the optimal size, cross-sectional diameter, rolling resistance, and tread pattern for the three cross models.... WSI approved these same tires in the "Sales Specification" ... issued by the manufacturer of the bikes, China Bicycles Co., Ltd.... WSI created and distributed to its authorized dealers a Sales Guide ..., which references these tires for the cross models.... WSI also created a consumer catalog, provided to prospective consumers, containing detailed descriptions of each model.... The tires specified for each of

the cross models at issue is [sic] Cross Center Ridge 700c × 38c....

10. WSI did not intend or plan that the Models be used with any tires other than those specified in the Sales Specification, the WSI Sales Guide, and the Diamond Back catalog....

11. WSI designed and offered for sale in 1993 a number of other bicycle models that had tires exceeding 4.13 cm in cross-sectional diameter....

12. Prior to 1989, ... Customs ... classified bicycles under the "not designed for use with tires" language based upon the size of the tire with which the bike was entered. If no tire was provided with the imported bicycle, Customs assumed that the tire would be of a size normally used on such models....

13. In April of 1989, the ... Service determined that certain cross bikes similar to the WSI Models were properly classified under the equivalent of subheading 8712.00.25, and thus a rate of duty of 5.5% was properly imposed on such bikes....

14. On August 27, 1990, ... Customs ... reversed its April 1989 determination, and declared that the cross bikes at issue in that case were properly classified under the TSUS equivalent of subheading 8712.00.35 (requiring a duty rate of 11%), even though the bikes at issue had been imported with tires that did not exceed 1.625 inches in cross-sectional diameter. Customs decided that a bicycle should be classified under 8712.00.25 only if "important design features ... preclude the use of tires exceeding 1.625 in diameter." ...

In its response submitted in accordance with CIT Rule 56(i), the defendant admits each of the foregoing representations except under 7, as to which it admits that the WSI models have the features indicated in the lettered subparagraphs "but denies that those are the only features possessed by the models", and number 10, which it denies because the plaintiff designed the frame members and forks of the bicycles in issue wide enough to accommodate tires that are wider than those with which the bicycles were imported. Moreover, it is customarily known in the trade which imports and

sells cross bikes that retailers in the ordinary course of business, and users of cross bikes, sometimes substitute wider tires for the original tires.

Defendant's statement in support of its own motion for summary judgment alleges that the following are material facts, among others, as to which there is no genuine issue to be tried:

3. The design of the rims, fork, chainstay and sea stay of a bicycle determine [*sic*] the maximum cross-sectional diameter of a tire that can be safely used on that bicycle. The chainstay of the imported bicycles in issue is the narrowest point of the bicycle through which the tire must pass.

4. The dimensions of the rims, forks, chainstays and seastays of the three cross models in issue can accommodate tires having widths greater than 4.45 cm. (1.75 in.).

5. The Diamond Back Sales Guide expressly states that each of the cross models "may be identified by 700 c rims with medium or wide tires. . . ." . . . The plaintiff imports a cross bike, the Over Ride model, that is equipped with a tire of 4.13 cm (1.625 in.) or greater in width.

6. There are a variety of tires available for 700c rim bicycles, including the three cross models. The widths of these tires vary between 3.8 and 4.5 cm., and the tires also may have different treads.

The plaintiff admits paragraphs 4 and 6 and the first sentences of paragraphs 3 and 5, as well as the fact that it imports a cross bike named Over Ride.[1]

## II

■ The court has reviewed all of the evidence submitted by each side and finds it supportive of the respective averments. While, as just shown, the parties are not in complete agreement on all of them, the court

is unable to conclude that this action cannot be resolved by summary judgment because trial is necessary to resolve the few factual disagreements. None is "such that a reasonable trier of fact could return a verdict against the movant." *Ugg Int'l, Inc. v. United States*, 17 C.I.T. 79, 83, 813 F.Supp. 848, 852 (1993), quoting *Pfaff American Sales Corp. v. United States*, 16 C.I.T. 1073, 1075, 1992 WL 391085 (1992). Rather, the court concludes that the dispositive issue is a question of law. *See, e.g., W.R. Filbin & Co. v. United States*, 945 F.2d 390, 392 (Fed.Cir. 1991). It is summarized by counsel for the plaintiff as

whether, as Defendant asserts, "not designed for use with" means "incapable of being used with." Plaintiff contends, in contrast, that "not designed for use with" should be interpreted using the common meaning of the words, and that a bicycle is "not designed for use with" tires exceeding 1.625 [inches] in diameter[1] if the manufacturer of the bicycle (1) intended that 1.5[-inch] tires be used, and (2) designed, built, and equipped the bike consistent with that intent.[2]

## A

■ As paragraphs 12–14 of plaintiff's statement show, prior to 1990 Customs had classified bicycles in the manner the plaintiff prefers, but that the Service thereafter "reversed" itself, deciding that a bicycle should be classified under HTS 8712.00.25 only if "important design features . . . preclude the use of tires exceeding 1.625 inches in diameter." Plaintiff's Exhibit 2, Customs HQ 087735, p. 3 (Aug. 27, 1990). That letter ruling points out that the courts have not had occasion to construe the not-designed-for phrase at issue. *Id.* at 2.

## (1)

Indeed, the brief for the *amicus curiae* states (at pages 9–10) that the phrase "is a

---

1. *See* Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute, pp. 1, 2.

2. Plaintiff's Reply Brief in Support of Summary Judgment, pp. 1–2. The footnote (1) to this summary recognizes the statutory change to the metric system of measurement:

. . . Thus, the original 1.625″ measurement of tire cross-sectional diameter is now 4.13 cm. The tires on the bicycles in question are 1.5″ (or 3.81 cm) in cross-sectional diameter. Customs has implemented a 1.75″ (or 4.45 cm) measurement of frame clearance.
*Id.* at 1.

unique tariff proviso, and does not appear anywhere else in the tariff schedule." Be that as it may, the opposite of the phrase, namely, "designed for" or "specially designed for" has appeared in tariffs and been interpreted by courts. For example, in *Sports Industries, Inc. v. United States,* 65 Cust.Ct. 470, 473, C.D. 4125, 1970 WL 15475 (1970), the court held that whether an article is "specially designed" or "specially constructed" for a particular purpose may be determined by an examination of the article itself, its capabilities, as well as its actual use or uses, citing *United States v. Air–Sea Forwarders,* 54 C.C.P.A. 67, C.A.D. 907, 1967 WL 8905 (1967), *Marshall Field & Co. v. United States,* 20 C.C.P.A. 225, T.D. 46037, 1932 WL 2102 (1932), and *Lionel Trading Co. v. United States,* 15 Ct.Cust.Appls. 365, T.D. 42562 (1928). In *Marubeni America Corp. v. United States,* 35 F.3d 530, 535 (Fed.Cir.1994), a case focusing on whether a motor vehicle was principally designed for the transport of persons or of goods, the court opined that, to answer the question, "one must look at both the structural and auxiliary design features, as neither by itself is determinative." That is, even if an object has a primary or principal design, it is not automatically controlling. *See, e.g., Sears Roebuck & Co. v. United States,* 22 F.3d 1082 (Fed.Cir.1994). *Cf. F.W. Myers & Co. v. United States,* 425 F.2d 781 (C.C.P.A.1970) (that cylindrical steel tank was designed for storage of compressed gases did not preclude classification as railroad car); *Trans–Atlantic Company v. United States,* 471 F.2d 1397 (C.C.P.A.1973) (attached spring should not govern classification of hinge); *Karoware, Inc. v. United States,* 564 F.2d 77, 82 (C.C.P.A.1977) (" 'designed' is ambiguous, being susceptible of interpretation as 'intended' or as 'particularly and especially constructed' "); *United States v. Abbey Rents,* 585 F.2d 501 (C.C.P.A.1978) (motorized wheelchair as article of furniture not established to the exclusion of its primary, mobility function).

In this action, the language at issue which was adopted by Congress for HTS 8712.00.25 is in the negative *viz.* "*not* designed for use

with ...". On its face, it is restrictive and thereby essentially leaves a party in plaintiff's position to disprove realistic usage other than that claimed.[3]

### (2)

To accord with defendant's current approach, the plaintiff has to demonstrate that features of its bicycles' design(s) vitiate use of tires having a cross-sectional diameter exceeding 4.13 centimeters. Defendant's exhibit A herein is a copy of Customs letter ruling HQ 952558 (Oct. 25, 1993) on the question of whether a "Univega hybrid bicycle" imported with 3.5 cm-wide tires was entitled to classification under subheading 8712.00.25. The Service responded in the affirmative on the grounds that that cycle

> was designed with a permanently welded bridge across the chainstay ... that ... prevents a tire greater than 4.13 cm in width from being used without the immobilization of that tire by contact with the bridge....

> ... [A] clearance of greater than 1.6 mm would not exist between the tire and a frame member, the permanently welded bridge. Therefore, we conclude that the bicycle was not designed for use with tires having a cross-sectional diameter exceeding 4.13 cm, and it is classifiable under subheading 8712.00.25, HTSUS.

The bicycles now before this court do not possess such permanent structural impediment to "safe and proper use of tires having a cross-sectional diameter exceeding 4.13 cm", to quote from HQ 952558, page 1.

### (3)

The plaintiff does not gainsay the absence of such an impediment, but it does deny that evaluating frame and fork sizes is the correct approach and that either the legislative or administrative history of the tariff provision is supportive of Customs herein. Moreover, the "evidence is uncontested that WSI

---

3.  *Cf.* Memorandum in Support of Plaintiff's Motion for Summary Judgment, p. 24 ("The question is not mere physical feasibility").

planned the bicycles to be used with 1.5 inch tires, and equipped them with the same."[4]

Whatever the merit of this argument, the fact remains that Congress has opted to classify bicycles of the kind at bar on the basis of two characteristics which are dependent on tire dimensions, which, of course, can and do vary. Moreover, bicycle tires are changeable, as are the wheels upon which they are mounted. Nor are they necessarily a constant vis-à-vis the structural components to which they attach. Nonetheless, the plaintiff refers to

> the axiom of Customs law that imported merchandise is dutiable in its condition as imported, so long as no deception is practiced.... Thus, the WSI Models must be classified on the basis of the tires supplied with them, because they form the condition of the bike as imported.... The bicycle's design is reflected in the way it is equipped when it first enters the country.[5]

It also contends that additional U.S. Note 2 to HTS chapter 87 supports its interpretation. That note provided at the time of importation:

> For the purposes of classifying bicycles under the provisions therefor[ ] in heading 8712, the diameter of each wheel is the diameter measured to the outer circumference of the tire which is mounted thereon or, if none is mounted thereon, of the usual tire for such wheel.

4. *Id.*

5. *Id.* at 10–11 (citations omitted). *But compare* Declaration of Customs Nat'l Import Specialist Robert DeSoucey, para. 9:
> While some ... [hybrid] bicycles have been imported with narrow tires, it has been my experience that the tires are, in many cases, replaced by dealers with tires having a greater cross-sectional diameter than those with which they were imported, and the bicycles then sold with the wider width tires.

*and* Defendant's Exhibit B (Costantino, *Diamond Back Arrival,* June 1987 Bicycle Guide 62, 62–63):
> ... Sure, the Arrival has narrow racing tires, but Diamond Back doesn't put them on to scare you away; it puts them on to save you money. You see, imported bikes with narrow tires slip past the border with a smaller duty—5.5 percent for bikes with tires 1.625 inches or smaller versus 11 percent on bikes with tires wider than that. And the duty applies not just

It is clear from the statement(s) of facts at hand that the plaintiff specified K–164 700c × 38c gumwall tires and that the same were shipped with each of the models in question, but it is not apparent that those tires were actually mounted on the wheels entered or that they were the "usual" tires for such composite wheels.[6] In any event, it has been conceded that those wheels and tires resulted in diameters exceeding the 63.5 centimeters required for classification under subheading 8712.00.25 *et seq.,* but it is not conceded (or shown) that tire sidewall dimensions control cross-sectional diameters. In fact, plaintiff's own sales literature states that cross bikes "may be identified by 700c rims with medium or wide tires". Affidavit of Bradley E. Hughes, Exhibit E, p. 29. And unlike wheel diameter, Congress has not seen fit to adopt a headnote covering tire cross-sections.

On its part, Customs posed the following question in its rulings HQ 950319 (Dec. 11, 1991), HQ 951864 (Oct. 23, 1992) and HQ 952558 (Oct. 25, 1993):

> Does a clearance of greater than 1.6 mm exist between the bicycle tire and fork or any frame member when the wheel assembly is rotated to any position? For example, is the width of the front fork (measured horizontally where the widest part of a tire would be located) greater than 4.45 cm (this represents 4.13 cm plus 1.6 mm on each side of the tire)? If the answer is

to the tires, but to the whole bike. So the Arrival comes with narrow tires to beat the tariff, but it's not particular about what shoes it wears once it hits the States. In fact, there's plenty of room around the fork and chainstays to swallow the fattest tire on the market.... *with* Declaration of James Bellas (Appendix A to Plaintiff's Reply Brief in Support of Summary Judgment), para. 6:
> Consumers very rarely request that tires equipped on hybrids by the manufacturer be changed. I believe that this situation occurs in no more than 1 or 2 percent of all sales of hybrid bicycles by bicycle dealers. If a consumer wanted wider tires on a hybrid bicycle, he could find such models without any need to change the tires on a bicycle.

6. For the specified makeup of the wheels, see pages 2 of exhibits B, C and D to the affidavit of Bradley E. Hughes, plaintiff's exhibit 12.

"no", then the bicycle is classifiable within subheading 8712.00.25, HTSUS.

The plaintiff criticizes the clearance thus adopted as "faulty on its face"[7] in that it is based on a regulation of the Consumer Product Safety Commission ("CPSC"), 16 C.F.R. § 1512.11(b), which governs minimum, as opposed to maximum, bicycle-wheel clearance[8] and also that *Marubeni America Corp. v. United States*, 35 F.3d at 537, holds that non-tariff regulations of other government agencies are not dispositive for purposes of tariff classification. But the subheading Customs is charged to enforce requires negative consideration of bicycle frame and fork design for use with tires of particular cross-sectional diameters, including those exceeding 4.13 centimeters.

### III

Given that the design of the frames and forks of plaintiff's merchandise can use tires exceeding that statutory limit for classification under HTS subheading 8712.00.25 and that such usage is neither unheard of nor out of the ordinary, this court is unable to conclude that its classification under subheading 8712.00.35 was incorrect. *Cf. Jarvis Clark Co. v. United States*, 733 F.2d 873, 878, *reh'g denied*, 739 F.2d 628 (Fed.Cir.1984). That is, plaintiff's reliance on its stated intent has not overcome the statutory presumption of correctness, 28 U.S.C. § 2639(a)(1), in this action or satisfied the burden of persuasion on its motion for summary judgment.

If this must be the conclusion on its motion, the plaintiff argues against grant of defendant's cross-motion for summary judgment on the ground that "Customs has misconstrued the CPSC standards and its test leads to serious safety problems." Plaintiff's Reply Brief in Support of Summary Judgment, p. 22. If such is the case, as the plaintiff itself argues, those problems are not the responsibility of the Service—or of this Court of International Trade, which can and therefore will enter judgment now on the classification issue properly within its jurisdiction.

### JUDGMENT

This action having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now, therefore, in conformity with said decision, it is

ORDERED, ADJUDGED and DE-CREED that plaintiff's motion for summary judgment be, and it hereby is, denied; and it is further

ORDERED, ADJUDGED and DE-CREED that plaintiff's merchandise is correctly classified under subheading 8712.00.35 of the Harmonized Tariff Schedule of the United States; and it is further

ORDERED, ADJUDGED and DE-CREED that defendant's cross-motion for summary judgment be, and it hereby is, granted and that plaintiff's complaint be, and it hereby is, dismissed.

---

7. Memorandum in Support of Plaintiff's Motion for Summary Judgment, p. 22.

8. The regulation provides:

*Alignment.* The wheel assembly shall be aligned such that no less than 1.6 mm (¹⁄₁₆ in.) clearance exists between the tire and fork or any frame member when the wheel is rotated to any position.