**WESTERN STATES IMPORT CO., INC., Plaintiff–Appellant,**

v.

**THE UNITED STATES, Defendant–Appellee.**

No. 96–1531.

United States Court of Appeals, Federal Circuit.

Sept. 11, 1998.

Brock R. Landry, Venable, Baetjer, Howard & Civiletti, LLP, Washington, DC, argued for plaintiff-appellant.

James A. Curley, Civil Division, Commercial Litigation Branch, International Trade Field Office, U.S. Department of Justice, New York City, argued for defendant-appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, U.S. Department of Justice, Washington, DC; and Joseph I. Liebman, Attorney in Charge, International Trade Field Office.

Michael R. Kershow, Collier, Shannon, Rill & Scott, PLLC, Washington, DC, for amicus curiae Bicycle Manufacturers Association of America, Inc. Of counsel on the brief was John B. Brew.

Before RICH, Circuit Judge, SMITH, Senior Circuit Judge, and BRYSON, Circuit Judge.

EDWARD S. SMITH, Senior Circuit Judge.

Western States Import Company appeals the decision of the U.S. Court of International Trade upholding U.S. Customs' classification of certain "cross" bicycles under HTSUS 8712.00.25. *Western States Import Co. v. United States*, 932 F.Supp. 1483, 18 ITRD 1826 (Ct. Int'l Trade 1996). Because the Court of International Trade properly adjudged Customs' classification, we affirm.

### Background

This case, which has been designated a test case by Customs, involves the proper classification of bicycles imported by appellant Western States Import Company ("WSI"). WSI imports bicycles manufactured in China and sells them in the U.S. under the brand name "Diamond Back." The bicycles at issue are known as "cross" or "hybrid" bicycles because they contain features of both mountain bikes and road bikes.

Bicycles with wheels greater than 25 inches in diameter are properly classified under one of two subheadings of Heading 8712 of the Harmonized Tariff Schedule of the United States ("HTSUS"). Road bikes are classified under 8712.00.25 at 5.5% duty, while mountain bikes are classified under 8712.00.35 at 11% duty.

The provisions of the HTSUS at issue read as follows:

8712.00   Bicycles and other cycles (including delivery tricycles), not motorized:

. . .

Bicycles having both wheels exceeding 63.5 cm [25 inches] in diameter:

8712.00.25   If weighing less than 16.3 kg [36 pounds] complete without accessories and not designed for use with tires having a cross-sectional diameter exceeding 4.13 cm [1.625 inches] . . . 5.5%

8712.00.35   Other.................................... ..... 11%

The bicycles at issue have wheels exceeding 63.5 cm in diameter and weigh less than 16.3 kg. At the time of importation, the bicycles are equipped with tires having a cross-sectional diameter of 3.8 cm. However, the frames are designed such that the bicycles could readily accommodate tires with a cross-sectional diameter exceeding 4.13 cm.

Customs classified the imported bicycles under subheading 8712.00.35, HTSUS. The Court of International Trade found that prior to 1990, Customs had classified such bicycles according to the tires with which they are imported. Customs later decided in a ruling letter that these bicycles should be classified under HTSUS 8712.00.25 only if important design features preclude the use of tires exceeding 4.13 cm in diameter.

On cross-motions for summary judgment, the Court of International Trade considered the provisions of the HTSUS at issue and determined that the language "not designed for use with tires having a cross-sectional diameter exceeding 4.13 cm" required WSI to demonstrate that the design of the bicycles was such that it *could not be used* with tires exceeding 4.13 cm in diameter. *Western States Import*, 932 F.Supp. at 1488. The court noted that "bicycles tires are changea-

ble, as are the wheels upon which they are mounted. Nor are they necessarily a constant vis-à-vis the structural components to which they attach." *Id.* at 1487. Noting that the imported bicycles are sometimes used with tires exceeding 4.13 cm, the trial court concluded that Customs' classification of the bicycles under subheading 8712.00.35 was correct. *See id.* at 1488.

The Court of International Trade, therefore, denied WSI's motion for summary judgment and granted the government's cross-motion for summary judgment. This appeal followed.

### Jurisdiction and Standard of Review

■ This court has jurisdiction over an appeal from the Court of International Trade pursuant to 28 U.S.C. § 1295(a)(5). We review the interpretation of tariff schedules completely and independently. *See Guess? Inc. v. United States*, 944 F.2d 855, 857 (Fed.Cir.1991). Likewise, we review a grant of summary judgment completely and independently. *See id.*

### Proper Classification of Imported Bicycles

■ The dispute in this case centers on the phrase "not designed for use with tires having a cross-sectional diameter exceeding 4.13 cm." The term "not designed for use with" does not appear anywhere else in the tariff schedule and has not been interpreted by this court. The closest corollary to this provision is the term "principally designed for" as interpreted by this court in *Marubeni America Corp. v. United States*, 35 F.3d 530 (Fed.Cir.1994).

In *Marubeni*, this court reviewed the classification of certain sport utility vehicles. The manufacturer claimed that the vehicles should be classified as "motor vehicles principally designed for the transport of persons," while the government argued that the vehicles should be classified as "[m]otor vehicles for the transport of goods." [1] *See Marubeni*, 35 F.3d at 533.

■ In the absence of contrary legislative intent, terms in a tariff schedule are to be "construed in accordance with their common and popular meaning." *Marubeni*, 35 F.3d at 533; *E.M. Chems. v. United States*, 920 F.2d 910, 913, 9 Fed. Cir. (T) 33, 37 (Fed.Cir. 1990).

The *Marubeni* court defined the term "designed" as meaning "done by design or purposefully [as] opposed to accidental or inadvertent; intended, planned." *Marubeni*, 35 F.3d at 534 (citing *Webster's Third New International Dictionary of the English Language*, Unabridged (1986)). Looking to the common meanings of the terms in the HTSUS, the court found that the vehicles were properly classified as "motor vehicles principally designed for the transport of persons," as they were designed " 'more' for the transport of persons than goods." *See id.* at 538.

The specific language at issue here requires WSI to establish affirmatively that its product is *not* designed for a specific use, rather than "specially" or "principally" designed for a specific purpose. The word "not" in subheading 8712.00.25 limits the tariff provision to bikes with design features that make them not suitable for or capable of use with wider tires. The use of the word "not" does not contemplate a balancing of design features to determine what is principal, as in *Marubeni*. Even if it were shown that appellant's bicycles were "principally designed" for use with narrow tires, this would not prove that the bicycles were not designed for use with wide tires. In *Marubeni*, although the vehicles were designed for the transport of goods and people, they were more designed or principally designed for the transport of people. *See Marubeni*, 35 F.3d at 534. If the tariff schedule at issue in *Marubeni* had required that the vehicles be "not designed for the transport of goods," the provision would not apply, even though the vehicles were designed principally for the transport of persons.

WSI contends that the intent of the manufacturer is the main criterion that Customs must consider in classifying merchandise, and the manufacturer's intent must be deter-

---

**1.** The two competing provisions in *Marubeni* read as follows:

8703 Motor cars and other motor vehicles principally designed for the transport of persons ..., including station wagons and racing cars.
8704 Motor vehicles for the transport of goods.

mined by assessing both the physical elements of the imported item as imported and contemporaneous design development documents. As the bicycles were shipped with narrow tires and the designer has offered testimony that the bicycle was intended to be used with narrow tires, WSI contends the bicycles should be classified as bicycles with narrow tires.

■ Courts attach little probative value to what importers themselves call what they import. *See The De Haan Co. v. United States,* 57 Cust. Ct. 39, 49, C.D. 2722 (1966) (citing *Gitkin Co. v. United States,* 54 Cust. Ct. 182, C.D. 2530 (1965)).

The interpretation espoused by WSI effectively changes the language of the statute, according primacy to the designer's state of mind and limiting the examination of the objective physical design features of a bicycle to a single facet of that design: the tire with which the bicycle is equipped. The reference to the bicycle in the statute refers to the design of the bicycle as a whole, not merely to the type of tires with which it was shipped. WSI's interpretation effectively shifts the focus of HTSUS subheading 8712.00.25 from the overall design of the article to a simple

examination of the tires with which the bicycle is actually equipped at the time of importation.

Even if the bicycles at issue were designed with narrow tires in mind, or "principally designed" with narrow tires in mind, they were not *"not designed* for use with" wider tires.[2] The bicycles at issue do not possess any permanent structural impediment to the safe use of tires having a cross-sectional diameter exceeding 4.13 cm. As such, they were properly classified under subheading 8712.00.35.

## Conclusion

We hold that the court applied the correct legal standards and that the evidence supports the Court of International Trade's decision that the bicycles at issue were properly classified under subheading 8712.00.35. Accordingly, the decision of the Court of International Trade is

*AFFIRMED.*

2. Customs provided an example of a bicycle not designed for use with wider tires. Customs letter ruling HQ 952558 (Oct. 25, 1993) discussed the "Univega hybrid bicycle" and found that the bicycle was "designed with a permanently welded chainstay that prevents a tire greater than 4.13 cm in width from being used without the immobilization of that tire with contact with the bridge."